**Frank Gene LOVE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 71S00–8610–CR–870.

Supreme Court of Indiana.

Feb. 25, 1988.

Anthony V. Luber, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

This direct appeal presents a question about a prosecutor's use of peremptory challenges to remove black jurors from the venire. We outline a method of assessing such claims for cases pending appeal when the United States Supreme Court handed down *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

A jury convicted Frank Gene Love of robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1985 Repl.); burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1985 Repl.); and two counts of criminal confinement, a class D felony, Ind. Code § 35–42–3–3 (Burns 1985 Repl.). The jury also determined Love was a habitual offender, Ind.Code § 35–50–2–8 (Burns 1985 Repl.).

The trial court sentenced Love to forty-two years in prison on the robbery and burglary convictions and thirty-two years for each count of criminal confinement. The trial court ordered all sentences to run concurrently.

Love raises eighteen issues on direct appeal. We address only one issue because *Batson* requires this action be remanded. *Batson* redefines the evidentiary burden placed on a criminal defendant who claims the State used its peremptory challenges to exclude members of his race from the jury.

On March 19, 1986, the first day of trial, the judge conducted voir dire examination of the venire. The judge excused five of the thirty-two potential jurors. He excused one black woman, Irene Washington, because she was a single parent whose daughter had medical problems. The judge then allowed the attorneys to question the first twelve people in the venire, two of whom were black.

The prosecutor asked Chantele Hill–Ford, a black woman, if she would hold the State to its burden of proof beyond a reasonable doubt on the elements of confinement no matter what color the defendant was. She said yes. The prosecutor asked Margaret Brown, the other black person, if she could judge the case based on the evidence even though she and the defendant were both black. Brown said she could. The prosecutor did not ask either prospective juror any other questions. The prosecutor used peremptory challenges to remove Brown and Hill–Ford.

The court seated another black woman, Grace Barnes, and the attorneys questioned her. The prosecutor exercised a peremptory challenge to remove her. Love's

counsel objected to the prosecutor's use of peremptory challenges to ensure that Love, a black man, was tried before an all-white jury.

The prosecutor responded that he had not violated existing law. He challenged Barnes, he said, because she had a son with a criminal history. He denied that striking Brown and Hill–Ford were the result of any systematic, intentional pattern of excluding blacks. He concluded, "[W]e believe that the law in Indiana allows exercise of pre-emptory [sic] challenges in any fashion we see fit...." The trial court denied Love's motion to strike the jury panel.

More than a month after the trial ended, the United States Supreme Court changed the evidentiary burden needed to establish an equal protection claim for a prosecutor's use of peremptory challenges. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), *overruling in part, Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Writing for the Court, Justice Powell noted that *Swain's* requirement that a defendant demonstrate repeated removal of blacks in a number of cases had been a "crippling burden of proof" largely immunizing prosecutors' peremptory challenges from constitutional scrutiny. 476 U.S. at 92–93, 106 S.Ct. at 1720–1721, 90 L.Ed.2d at 85. The new standard allowed a defendant to establish a prima facie case of purposeful discrimination solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Id.* at 95–96, 106 S.Ct. at 1722–23, 90 L.Ed.2d at 87.

■ A prima facie claim under *Batson* has three elements. First, the defendant must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire. Second, it is then presumed that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87 (quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244, 1247–48 (1953)). Third, "the

defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude" people from the jury on account of their race. *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88.

Justice Powell described the sort of circumstances which might lead a trial court to the conclusion that the defendant had established a prima facie showing of purposeful discrimination. A pattern of strikes against black jurors included in the particular venire, he said, might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support an inference of discriminatory purpose. Justice Powell described the inquiry as one which trial judges were especially well qualified to undertake.

■ Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. The prosecutor's explanation need not rise to the level of a challenge for cause, but it must be more than a mere denial of discriminatory motive. *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

■ In *Griffith v. Kentucky,* 479 U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that *Batson* applied retroactively to all cases, state or federal, pending on direct review. Love is before this Court on direct appeal. *Griffith* requires us to apply *Batson* even though Love's trial occurred before the case was handed down.

Cases tried before *Batson* was decided but appealed under the *Batson* standard require the exercise of some hindsight. Our resolution of such claims has revolved around the state of the record. When the record fails to establish that members of defendant's race were peremptorily removed by the prosecutor, we have rejected appellant's *Batson* claim and affirmed the conviction. *Weekly v. State* (1986), Ind., 496 N.E.2d 29 (voir dire not a part of the record); *Hickman v. State* (1987), Ind., 515

N.E.2d 511 (record did not indicate race of one of the challenged jurors or which party exercised each challenge). We have also affirmed where the prosecutor removed only some members of defendant's race and racially neutral grounds for challenging the others were apparent from the record. *Phillips v. State* (1986), Ind., 496 N.E.2d 87 (one black served on jury, three struck for legitimate reasons). Finally, we have affirmed where all members of a defendant's race were removed when the record demonstrated racially neutral reasons for each challenge. *Stamps v. State* (1987), Ind., 515 N.E.2d 507.

■ In this case, the prosecutor's questions to Brown and Hill–Ford suggested the women might be partial to the defendant because of their shared race. This suggestion and the removal of all three blacks from the panel point to the possibility of purposeful discrimination. Whether this possibility represents a prima facie showing is a determination better made by the trial court. As we have on other occasions when the law changed while a case was pending on direct appeal, we remand this matter to the trial court. *See Burnett v. State* (1981), Ind., 426 N.E.2d 1314 (case remanded in light of recent disapproval of "*Allen* Charge"). Remanding this case provides both the defendant and the prosecutor the opportunity to make a record and offer argument based on *Batson*. It also gives the trial court the opportunity to judge the factual contentions in light of the new standard.

We direct the trial court to hold a hearing on the prosecutor's use of peremptory challenges. If the trial court decides that the facts establish, prima facie, purposeful discrimination, the prosecutor will have the burden to come forward with a neutral, nonracial explanation for his action. If the trial court's assessment of the defendant's showing and the prosecutor's explanation leads it to conclude that the jurors were challenged on racial grounds it is authorized to order a new trial. If it finds that Love has not made a prima facie case or that the prosecutor's grounds are legitimate, jurisdiction should return here for a resolution of Love's other allegations of error.

The case is remanded to the trial court for these purposes.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.