**Armen Jerome SYLVESTER, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 71S00–8806–CR–524.**

Supreme Court of Indiana.

Jan. 26, 1990.

Rehearing Denied May 1, 1990.

Eugene C. Hollander, Indianapolis, Sp. Asst. to the Office of the State Public Defender, for appellant.

Linley E. Pearson, Atty. Gen. and Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

On December 6, 1979, appellant entered a plea of guilty to Robbery, a Class A felony, in accordance with a plea bargain. He received a sentence of fifty (50) years on January 25, 1980. On March 12, 1984, appellant filed a petition for post-conviction relief, which was granted on August 14, 1984, and a new trial was ordered. On February 17, 1986, appellant's jury trial began, which resulted in his conviction of Attempted Murder, a Class A felony, for which he received a sentence of fifty (50) years, and Robbery, a Class A felony, for which he received a sentence of fifty (50) years, his sentences to be served concurrently.

The facts are: On December 20, 1978, Michelle Bukowski was working in her office at Nehi Royal Crown Cola in South Bend, counting the money received from truck drivers. Appellant came to the door of her office, which was locked from the inside, and asked her for a job application. She told him that they were not hiring but appellant was insistent upon filling out an application. Bukowski found a blank application and opened her door only wide enough for the application to slide through. Appellant forced the door open, pointed a gun at her, and told her to give him the money. She refused, and he shot her in the face. She fell to the floor, then crawled to a buzzer on the telephone and pushed it until co-workers came to her aid. When she reached the telephone, she saw that the money was gone.

Roger Hamilton testified that at about noon on December 20, 1978 he was working in the garage of Royal Crown Cola when he heard the sound of a car speeding away and pebbles flying. He saw a light green 1970 Nova fishtailing and pulling away. He noticed that two black males were in the car. He then heard the buzzer and knew something was wrong. He and a co-worker went to the office area and found Bukowski on her knees, bleeding. They called an ambulance and administered first aid to Bukowski. Though she could not talk, her "yes" or "no" answers to Hamilton's questions revealed that she had been shot by a single black male.

Officer Niezgodski testified that he received a radio call that the suspect involved in the shooting at the bottling company could be in a green Nova with two black males in it. A car fitting that description passed him and he followed it. Another police car pulled in between Niezgodski's and the Nova, at which time an object was thrown out of the Nova. The Nova was stopped and during a pat-down search of appellant, police found a wad of bills in his coat pocket which amounted to approximately $956, and an additional $296.18 in his pants pocket. They also found that the object thrown out of the Nova was a handgun.

Bukowski testified that while she was in the hospital police showed her some photographs of black males. After seeing the first two photographs, she motioned for the officer to go on to the next one. She recognized the third photograph, which was of appellant, as the man who shot her.

Appellant argues his conviction should be reversed because he was improperly limited in the cross-examination of a State's witness.

Larry Jones testified that he sat outside the bottling company in the green Nova and waited for appellant while he was inside applying for a job. He stated that he did not know appellant had a gun or money. After they left the bottling company, they were pulled over by police. Jones subsequently was convicted of aiding or inducing attempted murder.

The State was granted a motion in limine as to what sentence Jones received, what portion of his sentence was reduced, and how much he had left to serve. However, the trial court specified that the motion was granted only through the *voir dire* and opening statements, and that the motion would be reconsidered at the time Jones testified. Appellant believes the motion in limine improperly infringed upon his right to cross-examine Jones. He cites *Jarrett v. State* (1986), Ind., 498 N.E.2d 967 (Givan and Pivarnik, JJ., dissenting.)

This Court held in *Jarrett* that significant harm results when the jury is prevented from learning the extent of benefit received by witnesses who accept a plea bargain in exchange for their testimony, and the exposure of a witness's motivation in testifying is an important function of the constitutionally-protected right of cross-examination.

The record in appellant's case shows that on direct examination, Jones testified that he currently was serving time for his conviction of aiding or inducing attempted murder relating to the bottling company shooting and robbery. He stated that he originally received thirty-eight (38) years, but partially due to his promise to testify in appellant's case, his sentence was reduced to twenty (20) years. Additionally, during cross-examination, the trial court overruled the State's objections to questions regarding whether he was told that his sentence would not be reduced if he refused to testify. The fact that Jones' sentence was reduced by 18 years for his compliance with the State was revealed adequately to the jury. We find no violation of the principles set forth in *Jarrett, supra.*

Appellant also argues his cross-examination of Jones was improperly limited concerning his criminal record. Jones was asked whether he was convicted of robbery in 1972, assault and battery in 1972, theft in 1973, and shoplifting in 1975. After answering these questions, he was asked whether he was charged with robbery in 1972. The State's objection to the question was sustained. He then was asked whether his 1972 theft conviction was broken down, and the trial court sustained the State's objection on the basis that the question had been asked and answered. Appellant relies on *Jarrett* and states that the trial court erred in restricting cross-examination.

Appellant's reliance on *Jarrett* is misplaced. The holding in *Jarrett* pertains to informing the jury of the extent of the benefit a witness receives for his testimony. The details of Jones' prior convictions are not relevant in determining the benefit he received for testifying in the case at bar. We find no error.

Appellant argues his motion for mistrial should have been granted because the trial court improperly excused a juror.

After the conclusion of the presentation of the evidence, the trial court instructed the jury that a recess was necessary so that the content of the final instructions could be determined. The jury also was admonished not to discuss the case among themselves until they had heard the final arguments and instructions. During the recess, Juror Green asked the bailiff how they were to choose a foreman and the bailiff told him that the jury must select one. Green informed the jury that they had to select a foreman, and they agreed that Green could be the foreman. Upon learning this information, the trial court held a hearing on the matter and determined that Green should be removed and the alternate should take his place.

Green was the only black member of the jury, and appellant is black. Appellant argues that the dismissal of Green violated *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, which provides a standard for determining whether a prosecutor had purposefully discriminated against a certain racial group when making his peremptory challenges during the formation of the jury. Appellant asserts that Green was excused by the trial court for no other apparent reason than that he was black.

We first note that appellant objected to Green's removal on the basis that he was no more culpable than the other jurors in disregarding the court's instructions not to discuss the case. He made no objection based on *Batson* principles. Appellant cannot base his current allegation of error on an objection made at trial which is unrelated to his claim on appeal. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054.

Although Green technically violated the court's instruction in discussing the case with the other jurors at that time, we cannot say that his conduct was such as to necessitate his removal. However, his re-

moval was not reversible error in that no prejudice has been shown.

■ Appellant's claim of discrimination is without merit. Under *Batson*, to make a *prima facie* case the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of his race from the venire. It then is presumed that peremptory challenges constitute a jury-selection practice which permits "those to discriminate who are of a mind to discriminate." Also, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude people from the jury on account of their race. *Love v. State* (1988), Ind., 519 N.E.2d 563. If the defendant is successful in making his *prima facie* case, the State may rebut the claim by showing a neutral explanation for challenging the jurors. *Id.*

In appellant's case, Green was not removed from the venire during the formation of the jury. Before Green was removed, the State asserted its reservations about Green continuing to serve due to his disinclination to follow the instructions of the court. We believe that the State exhibited a racially-neutral explanation for its request to remove Green. Because appellant has not been placed in a position of peril to which he should not have been subjected, we find no error in denying his motion for mistrial. *Criss v. State* (1987), Ind., 512 N.E.2d 858.

Appellant also argues the bailiff's conversation with Green was reversible error. He contends the conversation amounted to communication between the trial court and jury in his absence, which creates a presumption of prejudice.

■ Appellant is correct that an inference of prejudice arises from an *ex parte* communication between the trial court and jury. However, the State may avoid reversal if we are satisfied that no harm or prejudice resulted therefrom. *Wilson v. State* (1987), Ind., 511 N.E.2d 1014.

■ The record shows that the trial court told the jury that the proper procedure is for the jury to be told during final instructions that they must select a foreman when they are sent to the jury room for deliberations. Mr. Green was excused and the alternate took his place. The jury was instructed further that they should not be prejudiced for or against either the State or appellant as a result of replacing Green with the alternate. We fail to see how appellant was prejudiced by the communication. We find no reversible error.

Appellant argues the photographic lineup from which Bukowski selected his picture was improper and her in-court identification of him was inadmissible. He first argues that her identification of his photograph was suspect because she was in the hospital and on medication at the time she viewed the photographs. He believes the trial court should have granted his motion for continuance for the purpose of employing an expert who could testify about the effect of her medication on her ability to recognize her attacker.

■ A motion for continuance based upon an alleged need to have time for trial preparation is addressed to the trial court's discretion. The granting of continuances in order to allow more time for preparation generally is not favored without a showing of good cause and only will be granted in furtherance of justice. *Bryan v. State* (1982), Ind., 438 N.E.2d 709.

The record in appellant's case shows that the trial court denied his motion for continuance because the issue of identification was not raised until the case was set for trial, since then two hearings on the issue of identification had been concluded, and to grant the continuance would be to adjourn the proceedings to allow appellant to go on a fishing expedition.

Additionally, during a hearing on the motion to suppress, Officer Mahank testified that when he showed Bukowski the first two of the six photographs in the lineup, she motioned to go on to the next one. However, when she saw the third photograph, her eyes widened and she pointed to the picture. She indicated that she was

positive that appellant was the man who shot her. She then asked him whether appellant was in custody and whether he would get out on bond. From Officer Mahank's testimony, it is clear that Bukowski was lucid when she made a positive identification of appellant's photograph.

Appellant also argues the photographic lineup, State's Exhibits Nos. 16, 17, and 18, was improperly admitted because the subjects were wearing identification plates on which was printed "South Bend Police" and some numbers. Appellant's plate read:

12 20 78

South Bend Police

46295

HT 5 7 125

However, the record shows that when the State moved to admit the lineup into evidence, appellant specifically stated that he had no objection to the admission of Exhibits Nos. 16, 17, and 18. Therefore, the issue has been waived for purposes of appeal. *McCraney v. State* (1981), Ind., 425 N.E.2d 151.

Additionally, the photograph of appellant in the lineup was taken on the date of his arrest for the instant offense, December 20, 1978. Therefore, appellant's photograph was not objectionable because nothing on it indicated to the jury that he had a prior criminal record. *Dunsizer v. State* (1988), Ind., 523 N.E.2d 409.

We find no reversible error in the admission of the photographic lineup or Bukowski's in-court identification of appellant.

Appellant argues a State's witness made an improper reference to the death penalty. Officer Mahank testified about advising appellant of his constitutional rights and offering appellant a telephone to call his attorney for a second time. After appellant declined his offer, Officer Mahank told him that this was a very serious offense, and if the victim would happen to die, he could be charged with a capital murder case. Appellant objected to the statement on the ground that it went well beyond the scope of the question and involved a topic which was improper. He asked that the response be stricken. The trial court overruled his objection. Appellant contends the issue of his possible sentences should not have been disclosed to the jury.

The record shows the jury was instructed that upon conviction only the judge is responsible for assessing the penalty; thus, the jury can make a decision without being influenced by the severity or leniency of a sentence. Considering this instruction and the strength of the State's case, we find that Officer Mahank's inadvertent comment did not amount to reversible error. *Eckstein v. State* (1988), Ind., 526 N.E.2d 693.

Appellant asserts State's Exhibit No. 13, the bullet removed from Bukowski's body, was improperly admitted at trial because the State failed to establish its chain of custody. He believes that marks made on the bullet were not explained sufficiently.

The purpose of the rule requiring a showing of the chain of custody is to avoid any claim of substitution, tampering, or mistake. The doctrine requires that an adequate foundation be laid which shows the continuous whereabouts of the exhibit beginning with the time it came into the possession of police. *McAnalley v. State* (1987), Ind., 514 N.E.2d 831.

The less an exhibit is susceptible to alteration, tampering, substitution, or fungibility, the less strictly the chain-of-custody rule is applied. *Boyd v. State* (1986), Ind., 494 N.E.2d 284. The foundation for introduction of physical evidence, the characteristics of which can be identified by eyewitness identification, is fulfilled when the witness is able to identify the item and the item has relevance to the issues in the case. *Id.*

Detective Sergeant Brassell of the South Bend Police testified that he was present when Dr. Jureziz removed the bullet from Bukowski's body and placed his identifying mark on it. He handed the bullet to Detective Brassell, who placed it in a vial. He then mailed the vial to the

Federal Bureau of Investigation in Washington, D.C.

Donald Riedman of the F.B.I. testified that he received the vial, Exhibit No. 13, in the mail at F.B.I. headquarters. Upon examining the exhibit, he returned it to the South Bend Police Department.

Detective Brassell testified that when the vial and bullet were returned to him, he inventoried them to be sure it was the same evidence he had mailed to the F.B.I. At trial, Detective Brassell identified Exhibit No. 13 as the bullet removed from Bukowski. He stated, however, that there were additional inscribings near Dr. Jureziz's mark and the nose of the bullet had been shaved off. Otherwise, it was in substantially the same condition as it was when Dr. Jureziz handed it to him. We find the testimony sufficiently established the exhibit's chain of custody.

Appellant argues his sentence is manifestly unreasonable. He states the trial court neglected to consider the mitigating factors that he was only eighteen years old at the time of his arrest and that he has undergone a reformation since he has been incarcerated.

When a trial court decreases or increases a sentence due to mitigating or aggravating circumstances, the factors used in making that determination must be listed in the record. *Lewis, supra.* It is for the trial judge to determine the sentencing weight to be given the aggravating or mitigating circumstances. *Hatchett v. State* (1987), Ind., 503 N.E.2d 398. The finding of mitigating factors is not mandatory and rests within the discretion of the trial court. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

During appellant's sentencing hearing, three witnesses testified about appellant's change in character and model behavior since he has been incarcerated. However, in sentencing appellant, the trial court stated that while appellant may have taken steps to rehabilitate himself, his criminal record, which began when he was twelve years old, is the strongest spokesman. In addition to his criminal record and the fact that it shows appellant has a propensity for violence, the trial court considered as aggravating circumstances the fact that the injury appellant inflicted was a near-fatal one, and to impose a lesser sentence would depreciate the seriousness of the offenses.

Appellant's sentence is authorized by statute and we do not find that it is manifestly unreasonable in light of the nature of the offense and character of the offender. *Elliott v. State* (1988), Ind., 528 N.E.2d 87.

The trial court is affirmed.

PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion in which SHEPARD, C.J., concurs.

DeBRULER, Justice, dissenting.

After the evidence was all in, but before receiving final instructions, juror Green asked the bailiff, in whose charge the jury then was, how the jury should go about getting a foreman. The bailiff responded that it was to be done by the twelve jurors themselves. Green then raised the subject in the jury room, saying, "Well, here is what has to be done. The foreman has to be selected among us." All then joined in saying, "You can have it if you want it." He then dropped his head and said nothing else. There was no misconduct when the question was asked of the bailiff; that is what bailiffs are for. There was no discussion of the case by Green or the jury that was contrary to court admonition when the subject of the selection of a foreman was raised and the jurors volunteered Green for the job. The trial judge nevertheless discharged Green as a juror because his selection as foreman had taken place before the final instruction by the trial court, which states merely that the jury should go forth and select a foreman from its members. Defense counsel objected, saying Green should not be isolated from the rest of the jury, as they had all participated in the conduct. The judgment of the trial court to remove Green was without a sufficient

basis and was an abuse of discretion. The events leading to this ruling were totally innocuous; however, the ruling was not. It condemned the jury for breaking a rule in selecting the lone black juror as its foreman, which rule had not been communicated to them in the admonition by the court. The trial court oversteered the case here, and the resulting prejudice to the cause of the defense is substantial. I would reverse and remand for a new trial.

If, as required by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the State was under the duty to rebut a prima facie showing of discrimination, and sought to do so upon the events which led the trial court to discharge the juror Green, I would declare such rebuttal insufficient.

SHEPARD, C.J., concurs.