**Susan GRUND, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 52S00–9408–CR–00725.

Supreme Court of Indiana.

Aug. 7, 1996.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellee.

SELBY, Justice.

The defendant, Susan Grund ("Susan"), was convicted of murdering[1] her husband, James Grund ("Jim"). The trial court sentenced her to sixty years, the maximum term of years for murder.[2] She now appeals from the conviction and the sentence and raises the following three issues: (1) whether the trial court erred by allowing hearsay evidence, (2) whether defendant was denied her Constitutional right to effective assistance of counsel, and (3) whether imposition of the maximum sentence was manifestly unreason-

---

**1.** I.C. § 35–42–1–1(1).

**2.** I.C. § 35–50–2–3.

able. We affirm both the conviction and the sentence.

## FACTS

In the spring and summer of 1992, Susan and Jim Grund were experiencing marital problems. They were arguing frequently, and they were seeing a marriage counselor. Although there was some talk of divorce, this was not what Susan wanted. Because her husband was a prominent attorney, she feared losing custody of the children, and she feared losing Jim's financial support. Thus, Susan needed an alternative solution.

On the afternoon of July 4, 1992, Susan arrived unexpectedly at the home of David Grund, the victim's son by a previous marriage. She had been at the county fairgrounds, and as she returned home, she stopped in, claiming to have found a new shortcut home from the fairgrounds. Defendant questioned David about a handgun that he had recently purchased. David showed her where he kept his 9 mm semi-automatic weapon, and allowed her to handle it. Before leaving, defendant noticed that the storm door was broken and was secured by a shoestring. Defendant also inquired about where David and his girlfriend, Suzane, kept their rottweiler puppy when no one was at home.

Around 2:00 p.m. that day, David and Suzane attended a barbecue at the home of Suzane's parents. Defendant and her husband, along with their two children, thirteen-year-old Jacob and seven-year-old Tanelle, arrived around 4:00 p.m. and stayed until around 6:00 p.m. Shortly before dark, defendant telephoned Suzane's parents to find out if David and Suzane planned to attend the fireworks display. She was told that David was not feeling well, so they would be staying at Suzane's parents' home for a while longer, then they would return home. When David and Suzane arrived home around 10:30 p.m., they found that their home had been burglarized. Although cash and jewelry were in plain sight, the only thing missing was David's gun. Meanwhile, Susan had taken her two children and several other boys to see the fireworks. Unfortunately, when they got there, Susan was unable to find a place to park. She dropped off the boys and kept Tanelle with her. They rendezvoused at the ice cream stand shortly after the fireworks were over.

On August 3, 1992, defendant arranged for Jacob to spend the night with his cousin, Steven, in the newly acquired family camper. She also arranged for Steven's sister, Andrea, to spend the night at her home with Tanelle. At approximately 10:00 p.m., she left the two boys at the campground. Now alone, defendant went to obtain beverages for the boys. About an hour later, she picked up the girls at her mother's house, and the three arrived at the camper around 11:15 p.m. She gave the beverages to the boys and took the girls home.

Just prior to midnight, defendant called the Miami County emergency phone number to request an ambulance. She told the dispatcher that she had found her husband lying on the couch in the bedroom with blood coming out of his eyes and mouth. Jim Grund was already dead when the emergency workers arrived. The cause of death was a single gunshot wound to the head. Although there were no signs of struggle, there were two open suitcases on the floor with women's clothing strewn around them, and several dresser drawers were open with items pulled out. There were no signs of forced entry.

Detectives found a spent shell casing on the floor and recovered a spent bullet from the couch in the area where Jim's head had been. Both appeared to be from a 9 mm semi-automatic handgun. The detectives were aware that a similar weapon recently had been stolen from David's house. The next morning, they asked David for locations where he might have fired the weapon. As a result of this questioning, police recovered a bullet from a telephone pole which was located across the street from David's former residence. This bullet and the one recovered from the murder scene had been fired from the same gun.

Approximately two weeks after the murder, Susan, Jacob, Tanelle, and Susan's mother moved from Peru to Vincennes. On September 3, a former neighbor informed Susan that police were searching her home in Peru. That night, she met her sister, Darlene Worden, at a McDonald's near Indianapolis. As the two women drove to Peru, Susan confessed that she had killed her husband. According to defendant, it was supposed to be a double suicide, but she had been unable to kill herself. She claimed that instead of shooting himself, Jim made her shoot him so that his will would remain effective.

When Susan and her sister arrived at Susan's Peru home, defendant went directly to the laundry room, and told Darlene that "it" was still there. When they left the house, Susan was carrying two teddy bears, one of which had been ripped open across the back. She later admitted that she removed the gun from the house by hiding it in one of the bears. Susan then returned to Vincennes. Sometime later, Darlene's husband brought a bag of cement to her in Vincennes.

Around the beginning of November, Darlene happened to see the detective who was investigating the murder. Darlene believed that her mother was aware of Susan's actions, and she feared repercussions, both for herself and for her mother. She also believed that the gun was in Susan's home, and she was concerned for the children's safety. As a result, Darlene told the detective about Susan's confession. Susan was arrested on November 4, 1992.

The next summer, when Susan's mother was planning to move back to Peru, she found a family heirloom, a large copper kettle, in the attic. It was filled with cement. She took it back to Peru and gave it to the police. When police broke the cement, they found a 9 mm semi-automatic weapon, the same gun which had been stolen from David's house and used to kill Jim Grund.

### I. Hearsay Testimony

■ Defendant argues that the trial court erred in admitting various hearsay testimony. Not surprisingly, the testimony of these witnesses does not fit the defendant's version of events. Defendant's arguments in this regard evoke the words of Sir Walter Scott:

> O, what a tangled web we weave when first we practise to deceive.[3]

At trial, defendant's sister, Darlene, testified about a discussion she had with Susan, Tanelle, and Jacob, which involved the events on the Fourth of July. According to Darlene, Tanelle told the others that after the boys were dropped off to see the fireworks, she and her mother did not go straight to the ice cream parlor as her mother claimed, but instead went for a drive in the country. Susan then repeatedly insisted that Tanelle's story was not correct. Defense counsel objected to Darlene's testimony on the basis of hearsay. The State argued that Tanelle's statements were not offered for the truth of the matter asserted, but rather to show that they were contradicted by Susan. The trial judge overruled the objection and allowed the testimony. Defendant now appeals, arguing that the only possible relevance of Tanelle's statements is for the truth of the matter asserted; if Tanelle's statements are correct then defendant would have had an opportunity to steal David's gun.

■ Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. IND.EVIDENCE RULE 801(c); *Hughes v. State,* 546 N.E.2d 1203 (Ind.1989). The same statement offered for another purpose is not hearsay. *Blue v. Brooks,* 261 Ind. 338, 303 N.E.2d 269 (1973). Tanelle's statements were not offered to prove that the defendant and Tanelle took a drive in the country, but rather to prove that Susan was trying to coerce Tanelle into changing her memory. Such action is relevant to show defendant's consciousness of guilt. *Grimes v. State,* 450 N.E.2d 512, 521 (Ind.1983). The State also introduced evidence that the defendant tried to coerce other family members into changing their stories about the night of the murder. (R. at 988 (Darlene discussing the hour time gap in Susan's whereabouts and getting "these stories straight" to account for Susan's time); R. at 1291–92 (Jacob discussing the same time gap and how his

3. SIR WALTER SCOTT, MARMION: A TALE OF FLOODEN FIELD 617 (1808).

mother would "correct us, so it wouldn't sound as bad")). The contradiction of Tanelle's statements shows that defendant acted similarly regarding both important time periods in this case, thus ensnaring her entire family in the tangled web of her deceit.

■ Furthermore, even if Tanelle's statements had amounted to hearsay, such an erroneous admission would not warrant reversal in this case because Darlene's testimony was merely cumulative. *Hicks v. State,* 536 N.E.2d 496, 499 (Ind.1989); *Rhoton v. State,* 483 N.E.2d 51, 54 (Ind.1985). Jacob also testified to the substance of Tanelle's out-of-court statements, and he did so without objection by defense counsel.

We find that Tanelle's statements were not admitted for the truth of the matter asserted, and are not hearsay. Furthermore, had the statements been hearsay, we would find no reversible error as Darlene's testimony regarding these statements was merely cumulative.

## II. Ineffective Assistance of Counsel

■ Susan contends that she was denied her Constitutional right to effective assistance of counsel. Review of ineffective assistance of counsel claims involves a two-step process. The "appellant must make a preliminary showing that the performance of his trial counsel was deficient; he must then show that he suffered prejudice as a result." *Pemberton v. State,* 560 N.E.2d 524, 526 (Ind.1990) (discussing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Counsel is presumed to be competent; "[i]solated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel." *Id.*

■ Defendant first argues that defense counsel's performance was deficient when he failed to object to Jacob's testimony concerning Tanelle's Fourth of July statements. Defendant argues that this could not have been a strategy decision, since defense counsel already had objected to Darlene's testimony on the same topic. However, since the objection to Darlene's testimony already had been overruled, we cannot say that failure to object once again was deficient performance. *See Drake v. State,* 563 N.E.2d 1286, 1290

(Ind.1990) (holding that failure to make repeated objections is not ineffective when such objections would not have been sustained). Even assuming that this behavior was deficient, we cannot find prejudice. As discussed above, Tanelle's statements were not offered for the truth of the matter asserted and were properly admissible when Darlene testified about them. The same is true for Jacob's testimony concerning Tanelle's statements.

■ Related to the above argument, defendant claims that her counsel should have requested a limiting instruction for Darlene's and Jacob's testimony concerning Tanelle's statements. While defendant would have been entitled to a limiting instruction had defense counsel requested it, Evid.R. 105, defendant has failed to demonstrate prejudice as a result. Contrary to defendant's assertions, there is other evidence which is sufficient to demonstrate that she had an opportunity to steal David's gun on the Fourth of July. Although defendant testified that she parked across the street from the ice cream parlor and waited with Tanelle for the boys, Jacob testified that his mother and Tanelle were not at the ice cream stand when he and the other boys arrived, but she arrived there after a while. (R. at 1296). Jacob's testimony contradicted Susan's account, and provided Susan with the opportunity to steal David's gun. Thus, defendant has failed to demonstrate prejudice.

■ Defendant's next argument involves testimony about a 1990 burglary at defendant's Peru home. Indiana State Police Detective Robert Brinson testified that he had investigated this prior burglary. He also testified that he had interrogated defendant the morning following the murder. During this interrogation, defendant stated that she believed that some jewelry was missing from the dresser. Curiously, many of the same jewelry items which Susan believed to be missing at the time of the murder had also been reported missing in the 1990 burglary. Detective Brinson further testified that he did not believe a "true" burglary had taken place the night of the murder. Defense counsel did not object to this line of questioning until the prosecutor questioned Detective

Brinson regarding Susan's whereabouts when the 1990 burglary occurred. Following the objection, defense counsel filed a Motion in Limine and a Motion to Strike. The Motion in Limine requested an order to prohibit the State from introducing any further evidence or making further mention of the 1990 burglary. The Motion to Strike requested the trial court to strike all testimony concerning the 1990 burglary, and to admonish the jury to disregard it. (R. at 190). Both motions were denied.[4]

It is true that evidence of extrinsic crimes of a defendant is not admissible solely to prove a defendant's criminal propensity or that the defendant acted in conformity with that propensity. EVID.R. 404(b); *Hardin v. State*, 611 N.E.2d 123, 129 (Ind.1993). However, the evidence presented prior to the objection did not involve extrinsic crimes of the defendant. Defendant admits that the State "made no meaningful attempt, whatsoever, to establish that Susan Grund had anything to do with the commission of the 1990 burglary." (Appellant's Brief at 49). Rather, evidence that the two burglaries were "mirror images" raises the inference that Susan copied the earlier one to make it look like a burglar killed her husband. Because the prosecutor did not link defendant with the earlier burglary, admission of the evidence did not violate EVID.R. 404(b). Thus, counsel's performance was not deficient when he failed to object.

■ Defendant next argues that trial counsel was ineffective because he failed to raise objections to hearsay evidence presented during the testimony of Indiana State Police Officer Gary Boyles. Boyles was allowed to testify about statements made to him by David Grund regarding David's whereabouts the night of the murder and where David may have fired his gun prior to it being stolen. However, David's statements were not admitted for the truth of the matter asserted, but rather to show the

course of the investigator's conduct. *Long v. State*, 582 N.E.2d 361, 362 (Ind.1991).

In *Craig v. State*, 630 N.E.2d 207 (Ind. 1994), we set out a three-step analysis to be used when examining such a hearsay objection, which requires analysis of the following questions:

1. Does the testimony or written evidence describe an out-of-court statement asserting a fact susceptible of being true or false?

2. What is the evidentiary purpose of the proffered statement?

3. Is the fact to be proved under the suggested purpose for the statement relevant to some issue in the case, and does any danger of prejudice outweigh its probative value?

*Id.* at 211. Clearly, the testimony did contain statements asserting facts susceptible of being true or false. The evidentiary purpose of the statements was to demonstrate the source of the bullets which proved to be a ballistic match to the one recovered from the murder scene. Thus, the purpose was not for the truth of the matter asserted. Such evidence is relevant as foundation for the bullets. Finally, since David's statements do not incriminate anyone, we do not think that the danger of prejudice outweighs its probative value. Furthermore, David testified at trial and was available for cross-examination. Since a hearsay objection would not have been sustained, counsel was not ineffective for failing to object.

■ Officer Boyles was also allowed to read a search warrant and probable cause affidavit for Susan's Vincennes home, and defendant now contends that trial counsel should have objected to this reading due to the presence of hearsay in the affidavit. Search warrants and probable cause affidavits, although potentially admissible, should

4. Defense counsel included an explanation in the Motion in Limine that he did not object sooner because he did not hear the evidence being offered. Defendant explains that Mr. Scruggs' hearing had been severely damaged in a bomb explosion a number of years ago. Although a

defense attorney who is unable to hear the testimony may amount to ineffective assistance of counsel, the trial judge pointed out that co-counsel also was present in the courtroom when Detective Brinson was being questioned.

be presented only to the court and not to the jury. *Guajardo v. State,* 496 N.E.2d 1300 (Ind.1986). However, presentation to the jury is not reversible error per se. *Id.* In the present case, we agree that defense counsel should have objected to the State's reading of the affidavit to the jury, but, as in *Guajardo,* no prejudice resulted. The hearsay contained in the affidavit consisted of statements of Darlene Worden and David Grund. At trial, both of these individuals testified and were available for cross-examination, and both testified consistently with their statements to police. Thus, the jury learned nothing from the affidavit that they did not learn from other sources. Since the comments in the search warrant and probable cause affidavit were merely cumulative, any error was harmless. *See, e.g., Tynes v. State,* 650 N.E.2d 685, 688 (Ind.1995).

Finally, defendant argues that the trial counsel failed to object to evidence that Susan and Jim Grund were having marital problems, particularly to evidence that Susan had hit her husband. However, defense counsel did object when the subject was first raised, during the testimony of Pam Oglesby, a neighbor of the Grunds. (R. at 1243–53). At a hearing outside the presence of the jury, the State argued that evidence concerning the state of the marriage was relevant to show motive. The trial court overruled the objection, but limited any inquiry to within one year of the murder. *See Heck v. State,* 552 N.E.2d 446 (Ind.1990), *cert. denied,* 507 U.S. 929, 113 S.Ct. 1308, 122 L.Ed.2d 696 (1993) (although hearsay, evidence of a prior assault on the victim can be admissible in a murder case to prove motive or identity). When questioning resumed, defense counsel again objected. When this objection was overruled, he requested "the record to show my continuing objection to this line of questioning." (R. at 1253). Although it is true that the defendant objected only sporadically when other witnesses testified on the same subject, given the continuing objection and the result of prior objections, we do not find trial counsel's performance to be deficient in this regard.

Thus, defendant has failed to demonstrate a single instance where trial counsel's performance was deficient and caused prejudice pursuant to the *Strickland* standard. Accordingly, we reject defendant's claim of ineffective assistance of counsel.

### III. Sentencing

Defendant argues that the trial court erred by considering improper aggravators and failing to consider mitigators. Defendant also argues that a maximum sentence of sixty years is manifestly unreasonable in this case. Thus, defendant requests this Court to revise the sentence.

The trial court found the following aggravating circumstances:

1. Defendant's prior criminal history.

2. Defendant's need for correction.

3. A lesser sentence would depreciate the seriousness of the offense.

(R. at 242, 2005–06), and found no mitigating circumstances. (R. at 242, 2005). The court then imposed the maximum sentence of sixty years.

Sentencing is within the sound discretion of the trial court, and this Court will review sentencing only for abuse of discretion. *Sims v. State,* 585 N.E.2d 271 (Ind. 1992). A sentence authorized by statute will not be revised except where manifestly unreasonable. A sentence is manifestly unreasonable only if no reasonable person could find such sentence appropriate to the particular offender and offense for which it was imposed. *Id.;* IND.APPELLATE RULE 17(B). When a trial court increases a sentence due to aggravating circumstances, the factors in making that determination must be listed in the record. *Sylvester v. State,* 549 N.E.2d 37, 43 (Ind.1990). The finding of mitigating factors is not mandatory and rests within the sound discretion of the trial court. Finally, it is for the trial judge to determine the sentencing weight to be given any aggravating or mitigating factors. *Id.*

Defendant does not challenge the first aggravator, prior criminal history. Defendant has a prior conviction in a case involving the beating of a young child. This child, the son of a former husband, suffered various injuries, and is now severely handicapped. Although the defendant entered a nolo con-

tendere plea, the conviction is sufficient to support this aggravator.

■ Defendant does challenge the other two aggravators. She argues that the second aggravator, defendant's need for correction, is a mere recitation of the language of an aggravating circumstance listed in I.C. § 35–38–1–7.1(b). Defendant claims that the trial court made no attempt to set out facts to support this aggravator, nor did that court indicate why additional punishment is needed in this case. Defendant's argument is in error. The trial court specifically related this aggravator to defendant's criminal history, finding that there is a need for correction. This prior criminal history represents "a refusal of the defendant to conform to societal rules." (R. at 2005). As we find this to be more than a mere recital of the statutory language, we find no error with this aggravator. See *Penick v. State,* 659 N.E.2d 484, 487 (Ind.1995).

■ Next, defendant argues that the third aggravator, a lesser sentence would depreciate the seriousness of the offense, is improper because this aggravator is applicable only when the trial court is considering a reduced sentence. Defendant is correct that this statutory aggravator is appropriate only when considering the imposition of a sentence which is shorter than the presumptive. *Walton v. State,* 650 N.E.2d 1134, 1136–37 (Ind.1995). Thus, the trial court improperly applied this aggravator.

■ Defendant also argues that the court erred in failing to find mitigating circumstances which are clearly supported by the record. The finding of mitigating circumstances is within the sound discretion of the trial court. *Aguirre v. State,* 552 N.E.2d 473, 476 (Ind.1990). However, when there is substantial evidence in the record of the existence of significant mitigating circumstances and the trial court fails to find mitigating circumstances, this Court will conclude that they were overlooked or not properly considered. *Scheckel v. State,* 620 N.E.2d 681, 686 (Ind.1993). Defendant claims that the trial court overlooked several such mitigators, including: imprisonment of their mother would impose a substantial hardship on defendant's children, defendant's activity in civic affairs, and that a number of people in the community found defendant to be of good character and they requested mercy on her behalf.

First, incarceration is not the cause of the hardship on defendant's children. Defendant murdered the children's father, thus removing him from their lives. Therefore, we cannot find error in the trial court's failure to find hardship to be a mitigating factor. Similarly, although the defendant may have been involved in community activity, her husband had been a civic leader. Thus, although she may have given to the community, her actions also took much away from the community. See *Brooks v. State,* 560 N.E.2d 49, 61 (Ind.1990) (sentencing order not defective for failing to recognize community service work with children as a mitigating factor where defendant was convicted of child molestation). Finally, it is within the sound discretion of the trial court to find no mitigator although a number of people found defendant to be of good character. See *Magers v. State,* 621 N.E.2d 323 (Ind.1993) (sentencing court not obligated to accept defendant's version of what constitutes mitigating circumstances). This is especially true given that others requested the trial court to impose the maximum sentence. (R. at 199, 1941, 1947, 1948, 1950). As there are no mitigators which are clearly and uncontrovertedly supported by the record, we find no error with the trial court in failing to find mitigating circumstances.

■ Only one aggravator is necessary in order for the trial court to impose an enhanced sentence. *Reaves v. State,* 586 N.E.2d 847, 852 (Ind.1992); *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind.1993). Thus, defendant's prior criminal history and her need for correction are sufficient to support the enhanced sentence. With two valid aggravators and no mitigators, we cannot find that an enhanced sentence is manifestly unreasonable.

## CONCLUSION

The conviction and sentence are affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

SULLIVAN, J., concurs in the result.