James E. COOLEY, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 18S02–9706–CR–385.

Supreme Court of Indiana.

June 27, 1997.

Raymond A. Brassart, Brassart Law Offices, Muncie, for Appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Defendant appealed his conviction for Dealing in Cocaine, a Class A felony[1] and the Court of Appeals, in an unpublished opinion, affirmed the trial court. We grant transfer and affirm the trial court.

### Background

Defendant James Cooley was tried jointly with co-defendant, Gregory Lampkins, on July 10, 1995.[2] Both were convicted of Dealing in Cocaine, a Class A felony. Lampkins appealed his conviction to the Court of Appeals, which reversed the trial court. In a separate opinion issued today, we vacate the decision of the Court of Appeals and affirm Lampkins's conviction. *Lampkins v. State,* 682 N.E.2d 1268 (Ind.1997). Many of defendant's issues on appeal here are similar to those discussed in *Lampkins.*

### Discussion

#### I

The trial court denied defendant's motion to suppress evidence discovered after police stopped the automobile in which defendant and Lampkins were riding and defendant consented to a search of the vehicle. Defendant contends that the trial court erred in denying his motion to suppress for two reasons: (i) the police did not have reasonable suspicion necessary to make an investigatory stop; and (ii) defendant's consent to a search of his vehicle was invalid because he was not presented first with an opportunity to consult an attorney.

Lampkins raised the first issue in his appeal and we concluded that reasonable suspicion existed to justify a valid investigatory stop; we discuss that issue in detail in that opinion. 682 N.E.2d at 1271. For the same reasons set forth in *Lampkins,* we hold that the investigatory stop here was valid.

■ Defendant claims that he should have been offered an opportunity to consult counsel before he consented to a search of his car.[3] Because he was not offered the opportunity to consult counsel, defendant claims, the trial court was obligated to grant his motion to suppress evidence obtained during the search of his car. Defendant cites *Pirtle v. State,* 263 Ind. 16; 323 N.E.2d 634 (1975), to support his claim.

In *Pirtle,* defendant Robert Pirtle was arrested for possession of a stolen car. At the police station, after Pirtle had requested an attorney but before he could consult with that attorney, Pirtle was questioned and consented to a search of his apartment. During the search of his apartment, officers found evidence linking Pirtle to a prior homicide. Pirtle was charged with and convicted of Murder. Pirtle argued on appeal that his consent to the search of his apartment was not validly obtained because he was denied an opportunity to consult counsel before consenting to a search. 263 Ind. at 23, 323 N.E.2d at 637. We agreed with Pirtle and reversed his conviction. In so holding, we stated:

> [A] person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior

---

1. Ind.Code § 35–48–4–1(2) (1993).

2. Lampkins did not appear for trial and was tried *in absentia.*

3. Lampkins does not challenge the validity of the consent to the search of the car and therefore we do not discuss that issue in the *Lampkins* opinion.

to making the decision whether to give such consent. This right, of course, may be waived, but the burden will be upon the State to show that such waiver is explicit, and, as in *Miranda*, the State will be required to show that the waiver was not occasioned by the defendant's lack of funds.

263 Ind. at 29, 323 N.E.2d at 640. *See also Sims v. State*, 274 Ind. 495, 413 N.E.2d 556 (Ind.1980), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563, 570 (Ind. 1995) (a person in police custody must be informed of the right to consult with counsel before consenting to a search).

We recently applied the *Pirtle* and *Sims* cases to a case similar to the one at issue here. *Jones v. State*, 655 N.E.2d 49 (Ind. 1995). In *Jones*, officer Fautz pulled defendant Larry Jones over for a minor traffic violation. Officer Fautz had already received a tip from a confidential informant that Jones was carrying crack cocaine in the gas cap compartment of his car. After officer Fautz pulled Jones over, two other police officers pulled up and exited their cars. Officer Fautz asked Jones if the car belonged to him and Jones replied that it did. He also asked Jones if he would consent to a search of his car and Jones consented. One of the officers then opened Jones's gas cap compartment and found bags of crack cocaine. Jones was later convicted of Dealing in cocaine, a Class A felony.

On appeal, Jones claimed that the cocaine seized from his car was inadmissible at trial because he had not given a valid consent to the search. He argued that under *Pirtle*, he was entitled to be warned of the right to counsel before being asked to consent to a search. We held that while it was true that under *Pirtle* and *Sims*, "a person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given," *Jones*, 655 N.E.2d at 54, Jones was not in custody when he consented to the search of his automobile and so that the rules enunciated in *Pirtle* and *Sims* did not apply. *Id.* at 56. We stated "[t]he instant case contrasts starkly to *Pirtle*, in which the defendant was asked for consent to search his home while

he was in jail, detained for more than twelve hours, and after his right to counsel had been denied." *Id.* We also noted that:

> the procedure governing the stop obligated Fautz not to detain Jones any longer than necessary, but not to recite his *Miranda* rights. Ind.Code Ann. § 34–4–32–2 (West 1983). Had Jones refused to give the police permission to search, he would have been given two citations and been free to leave. The police had no right even 'to frisk' the vehicle without Jones' consent, and they would have had no option but to cease detaining him. Thus, we conclude that at the moment Jones was asked for permission to search his car, the prosecutorial process had not yet begun against him and *Pirtle* and *Sims* rights had not attached.

*Id.*

As in *Jones*, we conclude here that defendant was not yet in custody when he consented to a search of his car and that therefore his consent was valid. This case also contrasts greatly from that of *Pirtle*, in that Pirtle was in jail and had been detained for many hours before the consent was obtained. Here, defendant was not handcuffed or confined when he was asked to search his car. *See Torres v. State*, 673 N.E.2d 472, 474 (Ind.1996) (defendant was in custody for purposes of *Pirtle* requirements when defendant was handcuffed). Defendant here was not in custody at the time he consented to the search of his car and as such was not entitled to be informed of the right to consult with counsel before consenting to the search. The trial court did not commit reversible error when it denied defendant's motion to suppress.

## II

Defendant maintains that the trial court erred in denying his motion for a separate trial. We also addressed this issue in *Lampkins*. *Lampkins*, 682 N.E.2d at 1272–1273. Lampkins argued on appeal that he was entitled to a separate trial because defendant's and Lampkins's defenses were mutually antagonistic and therefore separate trials were mandated under the authority of *Underwood v. State*, 535 N.E.2d 507, 514 (Ind.1989) (trial

court must grant separate trials where parties' defenses are mutually antagonistic and acceptance of one party's defense precludes acceptance of other party's defense). After considering the defenses actually presented at trial, we conclude in *Lampkins* that defendant's and Lampkins's defenses were not mutually antagonistic in that defendant never made any claim that Lampkins actually possessed or dealt the drugs. *Lampkins*, 682 N.E.2d at 1272.

 Defendant here raises a slightly different issue. He claims that the trial court should have granted his motion for severance because Lampkins failed to appear at trial. Although not entirely clear, defendant appears to argue that had Lampkins been present at trial, Lampkins's testimony would have provided exculpatory evidence on behalf of defendant. However, to show that defendant was prejudiced such that he was denied a fair trial, defendant must make more than a mere assertion that Lampkins would have provided exculpatory evidence. *Huffman v. State*, 543 N.E.2d 360, 368 (Ind. 1989), *overruled on other grounds by Street v. State*, 567 N.E.2d 102 (Ind.1991). To determine whether a defendant was deprived of the opportunity to use a codefendant's exculpatory testimony such that the defendant was denied a fair trial, we look at the following: (i) whether the movant showed that the testimony would be exculpatory in effect; (ii) whether the movant showed to the court's satisfaction that the codefendant would testify; and (iii) whether the movant showed the exculpatory nature and significance of the testimony to the movant's defense or the extent of the potential prejudice to the movant if tried without the codefendant's testimony. *Id.* (citing *United States v. Echeles*, 352 F.2d 892 (7th Cir.1965) and *Johnson v. State*, 445 N.E.2d 107 (Ind.1983)).

Here, defendant did not offer any evidence regarding any of the criteria above. In his brief, defendant merely asserts that "when Lampkins did not show up for trial and the State elected to proceed in absentia, the right of Defendant Cooley to call Lampkins as a witness was effectively removed. It is true that no one knows what Lampkins would have said if he testified, but the Defen-

dant was deprived of that right." *Appellant's Br.* at 21–22. Defendant did not claim that Lampkins's testimony would be exculpatory; did not offer any proof that Lampkins would have testified; and did not explain how he would be prejudiced if tried without Lampkins's testimony. Therefore, we cannot say that the trial court erred in denying defendant's motion for a separate trial.

## III

Defendant claims that the trial court committed reversible error when it admitted certain statements by his girlfriend, Holly McDaniel. At trial on direct examination of McDaniel, the following colloquy between the State and McDaniel took place:

Q: Do you [McDaniel] remember talking to him [Detective Williams]?

A: I think—I believe yes.

Q: What did you tell the officers when you called them concerning Mr. Cooley?

GEOFFREY RIVERS [LAMPKINS'S COUNSEL]: Your Honor, I'm going to object at this point on behalf of Mr. Lampkins. It's pure hearsay to Mr. Lampkins.

RAYMOND BRASSART [DEFENDANT'S COUNSEL]: I would object on the same basis. Your honor, it would be hearsay.

RICHARD REED [STATE]: Judge, what she said to the police is not hearsay.

THE COURT: Objection's overruled. Repeat your last question, Mr. Reed.

Q: Tell the jury what you said to the police officers when you called them.

A: Told them—I told them that James was dealing drugs. That's what I told them.

Q: Did you describe James?

A: Yes.

Q: Did you tell police what kind of car he was driving?

A: Yes.

Q: Did you tell where he got the drugs?

A: Yes.

Q: What did you tell them?

A: I told them that him and—him and Lampkins had come back from Atlanta

and they brought some drugs back and they were going to be down there selling them.

GEOFFREY RIVERS: Your Honor, I'd further object on this, this testimony of what, I think a previous statements. We think that under Rule 403 that any prejudicial or probative impact is outweighed by any prejudicial impact.

(R. 363–365.)

■ First, defendant claims that McDaniel's statement about defendant dealing drugs constituted evidence of prior conduct which would be inadmissible under Ind.Evidence Rule 404(b). However, defendant did not object to this testimony on that basis at trial and therefore has waived that argument. *Lampkins,* 682 N.E.2d at 1274. *Brewer v. State,* 605 N.E.2d 181, 183 (Ind.1993).

Defendant also claims that the prejudicial impact of McDaniel's statement outweighs its probative value, in violation of Ind.Evidence Rule 403. However, as apparent from the record cited above, defendant did not object on this basis, either. Only Lampkins's counsel made that argument. Therefore, defendant also waives review on this issue. *Brewer,* 605 N.E.2d at 183.

Defendant did object to McDaniel's testimony at trial on the basis that it constituted hearsay and so has not waived this issue on appeal.

■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(c). McDaniel's statement was one made to the police on a prior occasion out of court and offered to prove the matters contained in the statement. Therefore, it falls within the 801(c) definition of hearsay.

At one time in Indiana, prior statements made by witnesses who were available to testify in court under oath were excepted from hearsay. *Patterson v. State,* 263 Ind. 55, 324 N.E.2d 482 (1975). In *Patterson,* our court held that out of court statements were admissible where the declarant was on the witness stand at the time that the statements were offered. We reasoned that to exclude

such evidence would not foster the policy behind the hearsay rule because the value of the evidence sought to be admitted did not rest upon persons not present in court for cross examination. 263 Ind. at 58, 324 N.E.2d at 484.

In 1991, after recognizing many of the concerns brought about by the application of the *Patterson* doctrine, we abandoned the *Patterson* doctrine and instead adopted Federal Rule of Evidence 801(d), which applies to prior statements by witnesses. *Modesitt v. State,* 578 N.E.2d 649 (Ind.1991). *See now* Ind.Evid. Rule 801(d). The primary concern with the *Patterson* rule was that it permitted the frequent substitution of direct testimony in court of a particular witness with prior out of court statements, often leading the jury to be exposed to drumbeat repetition of those out of court statements. 578 N.E.2d at 652. In light of these concerns, we concluded that the *Patterson* doctrine was no longer viable. Evid.R. 801(d) now governs the admissibility of prior statements made by witnesses.

Evid.R. 801(d) provides:

(d) Statements which are not hearsay. A statement is not hearsay if:

(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition; or (B) consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose; or (C) one of identification of a person made shortly after perceiving the person; or

(2) *Statement by Party–Opponent.* The statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity; or (B) a statement of which the party has manifested an adoption or belief in its truth; or (C) a statement by a person authorized by the party to make a statement concerning the subject; or (D) a

statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship; or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

Because McDaniel's statement falls within the Evid.R. 801 definition of hearsay, as it is a statement "other than one made by the declarant *while testifying at trial,*" it was inadmissible unless otherwise provided by law or the rules of evidence. Evid.R. 802.

■ The State argues that McDaniel's statement falls under Evid.R. 801(d)(2)(A)—a statement by defendant offered against defendant—and therefore is not hearsay. The State maintains that McDaniel's testimony was gleaned from defendant's statements to McDaniel about his drug dealing and therefore the statement McDaniel made was defendant's own statement. But the State's argument misses the mark. The reason McDaniel's statement here is hearsay is because she is testifying about *her* prior unsworn statements. It does not matter for this purpose that her prior statements purported to relate what defendant told her or not; what makes this testimony hearsay is that she was testifying as to what she said on a prior occasion, not as to what defendant said.

In any event, we are not convinced that McDaniel's prior statement to police that defendant was dealing drugs was a statement purporting to relate what defendant told her. McDaniel said, "Told them—I told them that James was dealing drugs. That's what I told them." R. 364. McDaniel did not say where she got this information: she did not tell police that defendant told her that he was dealing drugs; she just said that she knew he was dealing drugs. We cannot say that this testimony falls within the ambit of Evid.R. 801(d)(2)(A).

■ However, where a trial court errs in admitting evidence, we will not reverse the conviction if that error is harmless. *Bonner,* 650 N.E.2d at 1141. And where the probable impact of the evidence on the jury is "sufficiently minor so as not to affect the substan-

tial rights of the parties," the error is harmless. *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995). As we suggest in *Lampkins,* 682 N.E.2d at 1274–75, that will usually be the case where the hearsay evidence is merely cumulative of other evidence properly admitted. *See also McClain v. State,* 675 N.E.2d 329, 331–32 (Ind.1996); *Grund v. State,* 671 N.E.2d 411, 416 (Ind.1996); *Pruitt v. State,* 622 N.E.2d 469, 474 (Ind.1993).

As also related in *Lampkins,* 682 N.E.2d at 1274–75, virtually the same evidence as the improperly admitted hearsay came in later in McDaniel's testimony without objection and apparently not as hearsay. Here is the colloquy (prosecutor questioning McDaniel):

> Q: You told the jury a moment ago that ... [Cooley] and Mr. Lampkins were going to go to Atlanta to get some drugs or had gone to Atlanta to get some drugs? Is that right?
>
> A: They had just come back.
>
> Q: I want to know when, in relation to May the 26th [the date of Cooley's and Lampkins's arrest], they had just come back?
>
> A: They had been back approximately two (2) days.

(R. 370–71.) No objection was made by either defendant to this testimony which did constitute the statement of the witness while testifying at trial. With essentially the same evidence properly before the jury, we conclude that the probable impact on the jury of the improperly admitted hearsay evidence was "sufficiently minor so as not to affect the substantial rights" of defendant. As such, the error in admitting the hearsay evidence was harmless.

### Conclusion

We grant transfer, Ind.Appellate Rule 11(B), and affirm defendant's conviction.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.