Gregory L. LAMPKINS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 18S04–9609–CR–597.

Supreme Court of Indiana.

June 27, 1997.

Rehearing Granted Oct. 9, 1997.

**1270**

Geoffrey A. Rivers, Muncie, for Appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

The Court of Appeals reversed defendant Gregory Lampkins's conviction of Dealing in Cocaine, a class A felony.[1] We grant the State's petition to transfer and affirm the trial court.

1. Ind.Code § 35–48–4–1(2) (1993). Defendant was also found to be an habitual offender.

*Background*

On May 26, 1994, an anonymous caller informed Detective Allen Williams of the Muncie Police Department Metro Drug Task Force that defendant and another man, James Cooley, were dealing drugs in the parking lot of an establishment called the Rainbow Lounge. The informant described the vehicle, including its license plate number. A few weeks prior to this call, Williams had received other complaints that Cooley was dealing drugs in that general area. One caller did not identify herself but Williams recognized her voice as that of Cooley's girlfriend, Holly McDaniel. Williams called a confidential informant from whom he had received accurate information in the past to verify the information that McDaniel had given. The confidential informant verified McDaniel's report that defendant and Cooley appeared to be dealing drugs.

After Williams received the anonymous call on May 26, he called Officer Jay Turner with the information he received. Turner then went to the general area described by the caller where he saw the vehicle described by the caller approximately two blocks from the Rainbow Lounge parking lot. Turner pulled behind the car and verified the license plate number. He then activated his lights, but the vehicle did not stop; Turner had to cut the car off in order to stop it. After the stop, Turner and another officer approached Cooley and defendant. Cooley told Turner that the car was his and consented to Turner's search of the car. In the course of the search, the other officer found a Tylenol bottle which contained twenty-one rocks of crack cocaine under the front passenger seat in which defendant had been riding.

Defendant was charged with Dealing in Cocaine, a class A felony.[2] Defendant did not appear for his trial on July 10, 1995, and was tried *in absentia.* He was found guilty of dealing in cocaine and adjudicated to be an habitual offender. The trial court sentenced defendant to fifteen years for the dealing in cocaine conviction plus twenty-five years for the habitual offender enhancement. Cooley

2. The cocaine weighed 4.28 grams. Dealing in Cocaine is a Class A felony if the cocaine weighs 3.0 grams or more. Ind.Code § 35–48–4–1(2).

was tried and convicted in the same proceeding. We affirm his conviction today in a separate opinion. *Cooley v. State*, 682 N.E.2d 1277 (Ind.1997).

The Court of Appeals reversed the trial court and vacated defendant's conviction on the basis that there was no reasonable suspicion to justify the investigatory stop of defendant and Cooley. *Lampkins v. State*, 666 N.E.2d 1291 (Ind.Ct.App.1996).

### Discussion

### I

■ An investigatory stop of a citizen by an officer does not violate that citizen's constitutional rights where the officer has a reasonably articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968); *United States v. Hatch*, 827 F.Supp. 536, 541 (N.D.Ind.1993). Probable cause is not necessary. *Id.* Just what constitutes reasonable suspicion is determined on a case by case basis. *Baran v. State*, 639 N.E.2d 642, 644 (Ind.1994). It is also determined by the totality of the circumstances. *Hatch*, 827 F.Supp. at 541; *Platt v. State*, 589 N.E.2d 222, 226 (Ind.1992). "If the facts known by the police at the time of the 'stop' are such that a man of reasonable caution would believe that the action taken was appropriate, the command of the fourth amendment is satisfied." *Platt*, 589 N.E.2d at 226 (citing *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880–81).

■ The United States Supreme Court has stated that, as a general rule, an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid *Terry* stop. *Alabama v. White*, 496 U.S. 325, 329–30, 110 S.Ct. 2412, 2415–16, 110 L.Ed.2d 301 (1990). However, where significant aspects of the tip are corroborated by the police, a *Terry* stop is likely valid. *Id.* "Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest

but also that he was well informed, at least well enough to justify the stop." *Id.* at 332, 110 S.Ct. at 2417.

■ Information provided by a known informant who has provided information in the past to the police may in some cases constitute reasonable suspicion. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (reasonable suspicion present where informant was known to officer and had previously provided information); *Parker v. State*, 662 N.E.2d 994, 995 (Ind.Ct.App.1996), *trans. denied* (reasonable suspicion present where informant was known to officer and had provided reliable information in the past). *Cf. Johnson v. State*, 659 N.E.2d 116, 119 (Ind.1995) ("the record reveals no reason for regarding the informant as reliable").

■ We agree with the trial court here that reasonable suspicion was present to justify a valid *Terry* stop. First, the officers received the anonymous tip with very specific information as to the car defendant and Cooley were driving as well as the license plate number. Although an anonymous tip alone likely will not constitute reasonable suspicion, *White*, 496 U.S. at 329–30, 110 S.Ct. at 2415–16, here there was more. The anonymous tipster gave very specific information to the officer—that the car was a brown Impala with a specific license plate number and was in a specific location—and the officer verified that this information was correct when he went to the general area described by the tipster. He identified a brown Impala with the license plate number given by the tipster and which was in the specified location.

Second, in addition to the information provided by this source, the officers had some verification of this information through two other sources with whom they had previously had contact. One source did not identify herself, but Williams recognized her voice as that of Cooley's girlfriend, McDaniel. McDaniel reported that Cooley was dealing cocaine out of his car in the area that the officers found defendant and Cooley. The other source was a confidential informant from whom one of the officers had received accurate information many times in the past.

This informant verified that defendant and Cooley appeared to be dealing drugs from their car. These factors together constitute the reasonable suspicion necessary to satisfy *Terry*.

## II

Defendant raised a total of six issues for review at the Court of Appeals. Because the Court of Appeals found dispositive the issue of whether there was reasonable suspicion to justify the investigatory stop, the Court of Appeals did not rule on the other issues raised. Because we conclude that the investigatory stop was valid, we review the other five issues.

### A

■ Defendant claims that the trial court erred in refusing to grant defendant's request to sever the trial of defendant and Cooley. We disagree with defendant and affirm the trial court's decision to deny defendant's request.

Ind.Code § 35–34–1–9 permits the joinder of defendants in a single prosecution under the circumstances present here. However, Ind.Code § 35–34–1–11(b) permits a defendant to move for a separate trial. Implicated here is that part of the statute which requires the court to order a separate trial:

> whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant.

■ It is within the trial court's discretion to grant or deny a motion for separate trials. *Gordon v. State*, 609 N.E.2d 1085, 1088 (Ind.1993); *Underwood v. State*, 535 N.E.2d 507, 514 (Ind.1989). A trial court is required, however, to grant severance where the parties' defenses are mutually antagonistic and acceptance of one party's defense precludes the acquittal of the other. *Underwood*, 535 N.E.2d at 514. "On review, consideration is given to events which actually occurred at trial and not allegations in the motion for severance." *Hopper v. State*, 539 N.E.2d 944, 947 (Ind.1989) (citing *Parr v. State*, 504 N.E.2d 1014, 1017 (Ind.1987)).

*See also Averhart v. State*, 470 N.E.2d 666, 680 (Ind.1984) ("The soundness of the trial court's discretion is measured by what actually transpired at trial...." ). A defendant is not entitled to a separate trial merely because a codefendant implicates that defendant. *Huffman v. State*, 543 N.E.2d 360, 367 (Ind.1989), *overruled on other grounds by Street v. State*, 567 N.E.2d 102 (Ind.1991).

In defendant's motion for severance, defendant maintained that "[i]t is believed that Cooley is maintaining that the cocaine was not his and must be Lampkins'." (R. 36.) However, at trial, Cooley did not claim that the cocaine was defendant's. In fact, at trial, Cooley stated that although the drugs were not his, he also did not see defendant possess or deal any drugs (defense counsel questioning Cooley):

Q: Did you see him [defendant] deal any drugs?

A: No, I didn't see him [defendant] dealing any drugs.

Q: Did you see him possess any drugs?

A: No, I didn't.

(R. 208–209.)

■ As already stated above, on review, we look at what actually happened at trial to determine the soundness of the trial court's discretion in ruling on a motion for severance. *Hopper*, 539 N.E.2d at 947; *Averhart*, 470 N.E.2d at 680. Because Cooley did not assert any defense at trial that would have precluded acquittal of defendant if the jury had accepted that defense, defendant's and Cooley's defenses were not mutually antagonistic such that separate trials would have been necessary. We conclude that the trial court did not abuse its discretion in denying defendant's motion for separate trials. *Hopper*, 539 N.E.2d at 944, 947.

### B

■ Defendant claims that the trial court erred in proceeding with the trial in defendant's absence. Defendant was present at his initial hearing in which the trial court set the trial date for May 3, 1995, and also set the pre-trial conference for April 6, 1995. Defendant failed to appear at the April 6 pre-trial conference. His attorney stated that he

had made efforts to contact defendant prior to the conference, but that defendant did not respond. On May 3, the date initially set for trial, defendant also did not appear. On that date, the court then rescheduled the trial date for July 10, 1995. Defendant claims that because he did not know of the later trial date, the court could not continue the case against him without his presence.

A defendant in a criminal proceeding has a right to be present at all stages of his or her trial. U.S. Const. amend. VI; Ind. Const. art. I, § 13; *Fennell v. State,* 492 N.E.2d 297, 299 (Ind.1986). A defendant may waive this right and be tried *in absentia* if the trial court determines that the defendant knowingly and voluntarily waived that right. *Freeman v. State,* 541 N.E.2d 533, 535 (Ind.1989); *Fennell,* 492 N.E.2d at 299. The best evidence that a defendant knowingly and voluntarily waived his or her right to be present at trial is the "defendant's presence in court on the day the matter is set for trial." *Fennell,* 492 N.E.2d at 299 (citing *Brown v. State,* 181 Ind.App. 102, 390 N.E.2d 1058 (1979)).

Here, defendant was present in court on the day the court set his trial date for May 3. Defendant clearly knew when his trial was scheduled. On May 3, defendant failed to appear in court. That the trial court subsequently changed the trial date from May 3 to July 10 is inconsequential for purposes of determining whether defendant knowingly and voluntarily failed to appear. The fact that he knew of his trial date and failed to appear on that set date is evidence that he knowingly and voluntarily was absent. *Fennell,* 492 N.E.2d at 299.

In addition, defendant eventually expressed reasons as to why he did not appear in court, reasons which bolster the determination that defendant knowingly and voluntarily was absent from the trial. On August 28, 1995, in a letter that he sent to the court explaining that he left Indiana because he had no faith in the public defender, defendant stated: "Sir, my reason for not appearing in court, was because I didn't feel I would be represented to the fullest representation, by a court appointed attorney." (R. 149.) Also, later at the sentencing hearing, defen-

dant offered further explanation. He claimed that he chose to leave town when the State asked defendant about his not appearing for the pre-trial hearing (prosecutor questioning):

Q: Didn't you say, sir my reason for not appearing in Court was because I didn't feel I would be represented to the fullest?

A: That's what I said.

Q: So that's your choice?

A: That's what I said.

R. 839–40.

"A defendant's explanation of his absence is a part of the evidence available to this Court on the question of whether it was error to try him *in absentia.*" *Fennell,* 492 N.E.2d at 299 (citing *Ramos v. State,* 467 N.E.2d 717 (Ind.1984)). This explanation illustrates that defendant's failure to appear in court was knowing and voluntary.

Because defendant was present in court on the day that the trial date was scheduled and because defendant substantiated that he knowingly and voluntarily failed to appear for his trial in statements he later made to the court, we conclude that defendant knowingly and voluntarily failed to appear at his trial. As such, the trial court did not err by proceeding with defendant's trial *in absentia.*

### C

Defendant contends that the trial court should have reversed his habitual offender conviction because the State improperly failed to arraign defendant on that charge. Defendant cites *Sears v. State,* 456 N.E.2d 390 (Ind.1983), for the proposition that the State must arraign the defendant on a habitual offender charge.

Defendant is correct that a habitual offender charge is subject to the same procedural safeguards as any criminal offense and properly refers to the *Sears* case. However, failure to hold an initial hearing on the habitual offender count is not reversible error unless it results in prejudice. *Shelton v. State,* 490 N.E.2d 738, 744 (Ind.1986) (prejudice did not result where State filed habitual offender count three days before trial and

defendant had notice before trial of habitual offender charge. And even though defendant does not have actual knowledge of the habitual offender charge, prejudice is not necessarily the result if defendant's counsel has knowledge of the habitual offender count. *See Menefee v. State,* 514 N.E.2d 1057, 1060 (Ind.1987).

█ We think defendant was not prejudiced here. The record demonstrates that his counsel knew of the habitual offender charge at least four days before trial and defendant's counsel represented defendant's interest at the habitual offender phase of the trial. The State should have properly arraigned defendant on the habitual offender charge but because we find that it did not result in prejudice to defendant, that error was harmless. *Shelton,* 490 N.E.2d at 744.

### D

█ Defendant claims that the trial court erroneously admitted evidence of prior crimes or bad acts of defendant. At trial, McDaniel testified that she told police officers that defendant and Cooley had gone to Atlanta to buy drugs to sell in Muncie. Defendant objected to her testimony on the basis that it was hearsay and also that its prejudicial impact outweighed its probative value in violation of Evid.R. 403.[3] On appeal, defendant attempts to argue that the evidence was inadmissible because it is inadmissible prior conduct under Evid.R. 404(b) and that its prejudicial impact outweighed its probative value in violation of Evid.R. 403.

We have consistently held that a defendant may not present one ground for an objection at trial and advance another ground on appeal. *Brewer v. State,* 605 N.E.2d 181, 183 (Ind.1993); *Wright v. State,* 593 N.E.2d 1192, 1194 (Ind.1992). At trial, defendant's objection was that the evidence was hearsay and that it was more prejudicial than probative, not that it was inadmissible as prior conduct. As such, defendant cannot maintain in this appeal that the evidence should not have been admitted because it was prior conduct under Evid. R. 404(b). *See Lycan v. State,*

671 N.E.2d 447, 453 (Ind.Ct.App.1996) (defendant waived review of issue based on Evid. R. 404(b) analysis where objection at trial was merely that evidence was irrelevant and prejudicial, without mention of Evid.R. 404(b)).

█ Defendant did object to the evidence at trial on the basis that the testimony was more prejudicial than probative, in violation of Evid.R. 403, and also raises this issue again on appeal. As we discussed in *Cooley* in the context of analyzing a hearsay objection, virtually the same evidence came in later in McDaniel's testimony without objection. Here is the colloquy (prosecutor questioning McDaniel):

Q: You told the jury a moment ago that ... [Cooley] and Mr. Lampkins were going to go to Atlanta to get some drugs or had gone to Atlanta to get some drugs? Is that right?

A: They had just come back.

Q: I want to know when, in relation to May the 26th [the date of Cooley's and Lampkins's arrest], they had just come back?

A: They had been back approximately two (2) days.

(R. 370–71.) To repeat, no objection was made by either defendant to this testimony which did constitute the statement of the witness while testifying at trial. With essentially the same evidence properly before the jury, we conclude that even if the initial testimony violated Evid.R. 403 (a question we need not and do not decide), the probable impact on the jury of that testimony was "sufficiently minor so as not to affect the substantial rights" of defendant. As such, any error in admitting the testimony would have been harmless. *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995).

### E

█ Defendant contends that there was insufficient evidence to sustain his conviction for Dealing in Cocaine. In order to obtain a conviction on this charge, the State was re-

---

**3.** For a verbatim transcript of the trial testimony including objections and the courts response, *see*

*Cooley,* 682 N.E.2d at 1280–81.

quired to prove beyond a reasonable doubt that defendant (a) possessed cocaine (b) with intent to deliver. Defendant contends that the State did not meet its burden of proving either possession or intent to deliver. Ind. Code § 35–48–4–1(2).

■ Our court does not reweigh evidence when reviewing a claim for insufficiency of the evidence. *Cook v. State,* 675 N.E.2d 687, 692 (Ind.1996). "We will affirm a conviction if, after considering the reasonable inferences and probative evidence supporting the verdict, we conclude that a reasonable trier of fact could find each element of the charged crime beyond a reasonable doubt." *Id.* (citing *Greenlee v. State,* 655 N.E.2d 488, 492 (Ind.1995)).

### E–1

■ As to the possession issue, defendant did not have the cocaine in question on his person when he was searched; the cocaine was found in Cooley's automobile, underneath the seat in which defendant had been sitting. The absence of actual possession is a common problem in drug prosecutions,[4] and our court has held that "constructive" possession may support a conviction for a drug offense when actual possession is absent. *Young v. State,* 478 N.E.2d 50, 51 (1985); *Thomas v. State,* 260 Ind. 1, 4, 291 N.E.2d 557, 558 (1973). A defendant is in constructive possession of drugs when the State shows that the defendant has both (i) the intent to maintain dominion and control and (ii) the capability to maintain dominion and control over the contraband. *Bergfeld v. State,* 531 N.E.2d 486, 490 (Ind.1988); *Fassoth v. State,* 525 N.E.2d 318, 323 (Ind.1988).

■ It seems clear that defendant had the capability to maintain dominion and con-

trol over the cocaine. This requirement is met when the state shows that the defendant is able to reduce the controlled substance to defendant's personal possession. Because the Tylenol bottle was under defendant's seat and easily within his reach, he was able to "reduce" the cocaine to his "personal possession." *See Woods v. State,* 640 N.E.2d 1089, 1091 (Ind.Ct.App.1994) (cocaine under defendant's seat); *Jackson v. State,* 588 N.E.2d 588, 591 (Ind.Ct.App.1992) (cocaine between defendant's seat and door).[5]

■ When defendant's possession of the automobile in which drugs are found is not exclusive, the inference of intent must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence. *Fassoth,* 525 N.E.2d at 323; *Davenport v. State,* 464 N.E.2d 1302, 1307 (Ind. 1984). *See Carnes v. State,* 480 N.E.2d 581, 586 (Ind.Ct.App.1985) (listing additional circumstances and cases in support thereof). We acknowledge that some of the testimony presented by the State at trial which would support defendant's intent to maintain dominion and control (and his intent to deliver) may not be considered for purposes of determining the sufficiency of the evidence. First, as discussed in *Cooley,* 682 N.E.2d at 1282, McDaniel's initial testimony that she had told police defendant and Cooley had traveled to Atlanta and acquired drugs to sell in Muncie was inadmissible hearsay. Second, Detective Williams's testimony that a confidential informant had called in to say that defendant and Cooley where selling drugs in the parking lot was specifically not admitted for the purpose of proving that defendant and Cooley were selling drugs but rather to explain why the police took certain action.[6]

---

**4.** Among the settings in which the absence of actual possession have arisen are (i) residences; *Young v. State,* 478 N.E.2d 50, 51 (Ind.1985); *Davenport v. State,* 464 N.E.2d 1302, 1307 (Ind. 1984); *Thomas v. State,* 260 Ind. 1, 4, 291 N.E.2d 557, 558 (1973); (ii) motel rooms; *Bergfeld v. State,* 531 N.E.2d 486, 490 (Ind.1988); and (iii) automobiles; *Woods v. State,* 640 N.E.2d 1089, 1091 (Ind.Ct.App.1994); *In re J.L.,* 599 N.E.2d 208, 212 (Ind.Ct.App.1992); *Corrao v. State,* 154 Ind.App. 525, 532, 290 N.E.2d 484, 487 (1972).

**5.** In both *Woods* and *Jackson,* the defendants were the drivers of the cars and the proximity of

the cocaine was held to establish not only the capability to maintain dominion and control but intent as well. Because defendant here was a passenger and not the driver, we cite them only as authority for the capability factor.

**6.** Defendant's hearsay objection to this testimony was overruled on these grounds. (R. 397.) In addition, when defendant sought a jury instruction to remind the jury of the limited purpose for which this evidence was admitted, the trial court declined to give the instruction on grounds that

Nevertheless, we do find additional circumstances supporting the inference of defendant's intent to maintain dominion and control. First, as discussed in section D, *supra*, there was subsequent testimony from McDaniel admitted without objection that Cooley and defendant had returned from Atlanta where they had gone "to get some drugs" two days before the events at issues. Second, at trial, arresting officer Turner testified that after he stopped Cooley's vehicle and obtained his permission to search the vehicle, he looked in and "could see a Tylenol bottle under the passenger side seat of the vehicle, front seat ... in plain view." (R. 429.) Proximity to contraband "in plain view" is an "additional circumstance" that will support an inference of intent in this context. *Young v. State*, 562 N.E.2d 424, 426 (Ind.Ct.App.1990); *Smith v. State*, 505 N.E.2d 81, 85 (Ind.Ct.App.1987); *Watt v. State*, 412 N.E.2d 90, 98 (Ind.Ct.App.1980). Third, officer Turner testified that after he activated his lights to stop the automobile, the driver did not pull over and Officer Turner was forced to cut the car off in order to stop it. Flight is also an "additional circumstance" that will support an inference of intent in this context. *Hutcherson v. State*, 178 Ind.App. 8, 11–12, 381 N.E.2d 877, 879 (1978). Since defendant was not driving, this was probably not sufficient evidence of flight to establish intent by itself. But when combined with McDaniel's testimony and the proximity to the Tylenol bottle in plain view, we think there is enough evidence here from which the jury could infer intent to maintain dominion and control. As such, we find sufficient evidence of constructive possession to support the conviction.

### E–2

■ As to the sufficiency of the evidence on the element of intent, again we note that some of McDaniel's and Williams's testimony may not be considered for this purpose. However, we believe that intent to deliver here properly can be inferred from the amount and packaging of the cocaine seized. Detective Williams, an undercover narcotics investigator, testified that he was familiar with drug use and the methods of packaging

and selling illegal drugs. He testified that an individual drug user would generally smoke only one or at most two grams of cocaine per day and that it would be unusual for a user to carry more than that amount. He further testified that cocaine is usually packaged for sale in plastic bags. Here the evidence at trial was that 4.28 grams of cocaine was seized. Twenty-one cocaine "rocks" were in the Tylenol bottle. Fourteen of the rocks were in a plastic bag; seven remained loose in the bottle. Detective Williams also testified that the rocks in the plastic bag were larger, selling for $20–$30, while the smaller, loose rocks sold for $20 or less. We find that a jury could infer intent to deal from this evidence that defendant was in constructive possession of an amount of cocaine greater than that ordinarily carried by an individual user and that the cocaine was packaged for sale and sorted according to price and size.

There was sufficient evidence from which the jury could find defendant guilty of Dealing in Cocaine.

### Conclusion

We vacate the decision of the Court of Appeals, Ind.Appellate Rule 11(B)(3), and affirm the trial court.

SHEPARD, C.J., and SELBY and BOEHM, JJ., concur.

DICKSON, J., dissents as to Part II–E but otherwise concurs with the majority.

---

this point had already been made sufficiently clear to the jury. R. 506–508.