**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK OLIVERO**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana



FILED
Apr 09 2013, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TERMAINE T. FIELDS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1206-CR-278 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D05-1107-FD-929

**April 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Termaine T. Fields was convicted, after a jury trial, of Class D felony residential entry[1] and Class A misdemeanor domestic battery,[2] and he was found to be an habitual offender.[3] His appeal raises two issues:

1. Whether the trial court committed reversible error because it did not conduct a formal initial hearing on the habitual offender count, and

2. Whether the trial court abused its discretion because it did not find certain mitigating factors when sentencing Fields.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Fields was charged on July 8, 2011, with Class D felony residential entry and Class A misdemeanor domestic battery. On July 26 , the trial court scheduled Fields' jury trial for October 19 and a pre-trial conference for September 26. On September 9, the State alleged Fields was an habitual offender. The trial court ordered the initial hearing on the habitual offender count would occur during the hearing set for September 26.

Fields appeared at that hearing with his counsel. Both the State and defense counsel indicated they were ready for trial. Neither the parties nor the trial court mentioned the pending habitual offender count.

Then, on the day of trial, defense counsel advised the court Fields did not remember having an initial hearing on the habitual offender count. The trial court asked Fields if he had read the habitual offender count, and he admitted he had. The following discussion took

---

[1] Ind. Code § 35-43-2-1.5.
[2] Ind. Code § 35-42-2-1.3.
[3] Ind. Code § 35-50-2-8.

place:

[Defense Counsel]:  Yes.  Judge, the State filed an Habitual.  [Fields] swears he doesn't remember having an initial hearing on that.  Thank you.  And it was filed-I can't read the file stamp.  But [Prosecutor's], certificate of service was nine (inaudible), so I'm assuming that's the filing date.  That is the 10th day, but again, [Fields] just doesn't remember.  I guess [Fields] doesn't remember having that read to him.

COURT:  So what are you asking me to do this morning?

[Defense Counsel]:  I'm just bringing that to the Court's attention, if the Court wants to read it to him.  He knows the penalties.  He just wanted you to know that.  He doesn't remember having the initial.

COURT:  Mr. Fields?

MR. FIELDS:  Yes, ma'am.

COURT:  Good morning, Mr. Fields.  In the abundance of caution, I will go ahead and -- you want me to read the Habitual charges to you or have you already read them yourself?

MR. FIELDS:  I've read them.

COURT:  All right.  And you understand the range of punishment?

MR. FIELDS:  A-

COURT:  Did you talk to [defense counsel] about [the habitual offender count]?

MR. FIELDS:  Yes.

COURT:  All right.

[Defense Counsel]:  For what-for what it was worth, he wanted you to know that.

COURT:  Okay.  So do you have any questions regarding the Habitual Offender enhancement?

MR. FIELD[s]:  Yeah.  I never was -- like I said, I had a hearing on the 26th for it, but I can't (inaudible).

REPORTER:  I can't hear you.  I'm sorry.

COURT:  Speak up a little bit.

MR. FIELDS:  I said that on the 26th I had a -- supposedly had a hearing for it.  On the 26th only thing we talked about was the -- the lawyer mentioning a motion for -- motion for discovery and said -- asked a -- Judge asked if we set, ready for trial.  I said yes.  Actually the State said yes and that was the end of it.

\* \* \* \* \*

STATE:  . . . [T]he fact that he hasn't had his initial hearing doesn't change the fact that the State is ready to proceed on it today.   If he would like a formal initial hearing, he can have it today.   . . . Furthermore, it was filed on September 9th and he has an attorney and

3

I'm sure [defense counsel] would have explained to him the penalties. So he's not prejudiced by the fact that he has yet to have initial hearing on the Habitual Offender at this point.

COURT: [Defense counsel], anything further?

[Defense counsel]: No, ma'am.

COURT: All right. Does he want a formal hearing? I just asked him if he understands the range of punishment and that he's read it and understands it and he said yes, but is that correct?

(No response.)

COURT: Okay. So do we need to do anything further then?

[Defense counsel]: No, ma'am.

(Jury Trial Tr. at 4-6.)

While the jury was deliberating his guilt, Fields informed the trial court that he would "stipulate" to the Habitual Offender allegation if the jury found him guilty of residenail entry and domestic battery. (*Id*. at 162.) The jury found Fields guilty of those two crimes, and then the following conversation took place:

COURT: All right, the jury having found the Defendant guilty of Count I and Count II, I will enter judgments of conviction on both counts. We'll move into the second phase, which is the Habitual Offender. . . .

\* \* \* \* \*

COURT: [Defense counsel] do you need more time with your client before proceeding?

[Defense counsel]: I'll wait till he regains his composure, Judge.

\* \* \* \* \*

COURT: Mr. Fields, are you ready to proceed?

(No response.)

COURT: As you know, the State has filed a notice of its intent to seek Habitual Offender enhancement. At this time, Mr. Fields, I would ask you, are you the same Mr. Fields that on or about July 15th, 1996 in the County of Allen, State of Indiana, did commit felony criminal act, to-wit: Attempt Theft, a Class D Felony and that said Defendant was in Cause Number 02D04-9607-FC-324 [sic] convicted and sentenced for the commission of said felony on the 6th day of December, 1996 in the County of Allen, Fort Wayne, Indiana?

\* \* \* \* \*

4

MR. FIELDS: Yes.

COURT: All right. Additionally, are you same Termaine T. Fields that on or about the 17th day of September, 2002 in the County of Allen, State of Indiana, did commit another unrelated felony criminal act, to-wit: carrying a Handgun without a License, a Class C Felony. That said Defendant was in Cause Number 02D04-0209-FC-170 convicted and sentenced for the commission of said felony on the 17th day of March, 2003 in the Allen County Superior Court, Fort Wayne, Indiana?

MR. FIELDS: Yes.

(*Id.* at 163-65.) The trial court then entered a judgment of conviction on the habitual offender count.

At the sentencing hearing on November 9, 2011, the court asked Fields whether he was satisfied with the representation he received from counsel:

MR. FIELDS: No . . . There's a lot of things that happened that day [of trial that] I was not aware of.

COURT: Like what?

MR. FIELDS: The fact that . . . I didn't know nothing about a plea bargain. Second, I was -- feel like I was -- I was forced into the trial not knowing nothing and the Habitual enhancement. I didn't know anything about that until the day before trial.

COURT: All right. You admitted to that. You and I discussed the Habitual enhancement and you admitted to that.

* * * * *

[Defense counsel]: . . . If he-if he didn't have an initial hearing on [the habitual enhancement] originally when it was filed, then perhaps that's an issue down the road, but --

COURT: Well, I have in my file and I do recall this -- bringing it to my attention . . . and it looks like we did, we did his initial hearing on the day of the jury trial and I believe -- it's not in my notes, but I would assume you told me after the Habitual -- after the initial hearing, I think there was some issue the day of trial that he didn't have his initial hearing, so we conducted one according to my notes. I don't know what the record was.

[Defense counsel]: We did.

COURT: Okay. Or he admitted-or waived it. Whatever we did, but regardless when I asked both sides then if we were ready for trial-ready to proceed to trial after that.

5

[Defense counsel]: Yes, ma'am. That's my response to [Fields'] complaints.

(Sentencing Tr. at 4-7.)

The court heard testimony from Fields and arguments of counsel regarding aggravating and mitigating circumstances. Fields testified that he wanted to apologize to his wife and his parents, and the trial court confirmed that he was not admitting he committed the offenses. The court went on:

> In weighing the aggravators and mitigators in this case I'll start with the mitigators in which I find zero. I don't even hear any remorse other than the fact -- which is why I asked you the question, other than the fact you've had a hard life. Many people do. And you're sorry now that you got caught, but I heard no remorse regarding the facts and circumstances nor your past history. As aggravating circumstances I look to your past criminal history. I note and the prosecutor has outlined them completely. I've made the Pre-Sentence Investigation Report a part of the record so that Pre-Sentence Investigation Report outlines them fully. However, in summation there's three juvenile delinquence [sic] adjudications. You were placed on informal adjustment three times. As a juvenile, your juvenile probation was revoked once and you were sent to the Indiana Boys' School. However, as an adult and candidly when I look at your age of 34 years old, you're not that old. As an adult you've had 26 prior misdemeanor convictions and six prior felony offenses. You've have [sic] five misdemeanor suspended sentences modified and four misdemeanor suspended sentence[s] revoked. You've had two terms of your felony probation revoked and you've been found in violation of parole four times. I also note that you admitted to being a member of a gang which shows me your-your character candidly. I will show that prior attempts at -- all prior attempts at rehabilitation have failed. Additionally in looking at the character of Mr. Fields, I find that as an aggravator. . . . I note as your character as well that you asked the victim to lie for you. . . . As I look to the IRAS score which helps me determine whether or not I place you in prison or probation or the length of time, I note that as the prosecutor pointed out, you are very high risk, 34 plus, which we don't see very often in the Court. I will show that the aggravating circumstances drive your sentence far above the advisory and I will sentence you in Count I the Residential Entry, to three years in the Indiana Department of Corrections [sic]. Sentence you to Count II, Domestic Battery, a Class A Misdemeanor to one year in the Indiana Department of Corrections [sic]. I will enhance that sentence with the Habitual Offender tacking on an

additional four and a half years.

(*Id*. at 21-23.) All counts were ordered served consecutively, for an aggregate sentence of eight and a half years.

**DISCUSSION AND DECISION**

1.  <u>Habitual Offender Enhancement</u>

Fields argues there was reversible error because a formal initial hearing was not held on his habitual offender enhancement. Fields is correct that "[an] habitual offender charge is subject to the same procedural safeguards as any criminal offense," *Lampkins v. State*, 682 N.E.2d 1268, 1273 (Ind. 1997), *modified on reh'g on other grounds*, 685 N.E.2d 698 (Ind. 1997), but "failure to hold an initial hearing on the habitual offender count is not reversible error unless it results in prejudice." *Id*. Even if a defendant did not have actual knowledge of the charge, prejudice does not necessarily result if defense counsel had knowledge. *Id*. at 1274.

While a formal initial hearing was not held, Fields's counsel stated he had read and discussed the habitual offender charge and potential penalties with Fields. The State and the trial court both indicated a willingness to have a formal initial hearing, and the lengthy discussion concluded this way:

> COURT:              All right. Does he want a formal hearing? I just asked
>             him if he understands the range of punishment and that he's read it and
>             understands it and he said yes, but is that correct?
> (No response.)
> COURT:              Okay. So do we need to do anything further then?
> [Defense counsel]: No, ma'am.

7

(Jury Trial Tr. at 4-6.) There was noreversible error. *See Lampkins*, 682 N.E.2d at 1274 (holding no reversible error because counsel knew about the charge at least four days before the trial).

2.      Mitigating Circumstances

Fields argues the trial court abused its discretion in sentencing him to the maximum possible sentence of eight and a half years because it ignored significant mitigating factors. Sentencing decisions rest within the sound discretion of the trial court, and we review those decisions only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on reh'g on other grounds* (Ind. 2007). An abuse of discretion has occurred if a decision was "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*.

A a trial court is "required to identify all significant mitigating circumstances." *Id*. at 492-93. To demonstrate a trial court overlooked a valid mitigator, an appellant must demonstrate the evidence of such mitigator was "both significant and clearly supported by the record." *Id*. at 493.

Fields argues the court should have found as a mitigator his admission he was an habitual offender, as that relieved the State of the burden of proving his prior convictions.[4] Our Indiana Supreme Court has explained:

---

[4] The State asserts Fields waived this argument because he did not assert it at the sentencing hearing. Fields' admission to the habitual offender allegation was, in essence, a plea of guilty to that allegation. An appellant may raise a guilty plea as a mitigator for the first time on appeal because "a sentencing court is inherently aware of the fact that a guilty plea is a mitigating circumstance." *Anglemyer v. State*, 875 N.E.2d 218, 220 (Ind. 2007). We therefore reject the State's allegation that Fields waived this argument.

> [A] defendant who pleads guilty deserves 'some' mitigating weight to be given to the plea in return. But an allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant. And the significance of a guilty plea as a mitigating factor varies from case to case. For example, a guilty plea may not be significantly mitigating when it does not demonstrate the defendant's acceptance of responsibility or when the defendant receives a substantial benefit in return for the plea.

*Anglemyer v. State*, 875 N.E.2d 218, 220-21 (Ind. 2007) (internal citations omitted).

After the jury found Fields guilty of residential entry and domestic battery, Fields pled guilty to being an habitual offender. Fields' criminal history included six felony convictions and the State would presumably need only to print court documents to demonstrate he was an habitual offender. We therefore cannot hold the trial court abused its discretion by overlooking *significant* evidence of a mitigator. *See Edrington v. State*, 909 N.E.2d 1093, 1101 (Ind. Ct. App. 2009) (guilty plea does not rise to level of significant mitigator when "evidence against him is such that the decision to plead guilty is merely a pragmatic one"), *trans. denied*.

Fields also argues the court should have found a mitigator in the remorse he demonstrated by telling his parents he was sorry. However, when given the opportunity to clarify whether he was sorry for the crimes for which he was convicted, Fields continued to claim he had not committed the crimes. As a result, we cannot say that Fields exhibited such significant remorse that the trial court was required to find it as a mitigating factor. *See*, *e.g.*, *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011) (finding no mitigator in alleged remorse because trial court had authority to assess credibility of witnesses), *trans.*

*denied.*

Affirmed.

ROBB, C.J., and PYLE, J., concur.