# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 30 2018, 10:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin James Rent,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 30, 2018<br><br>Court of Appeals Case No.<br>49A04-1712-CR-2914<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese M. Flowers, Judge<br><br>Trial Court Cause No.<br>49G20-1604-F2-12810 |

**Bradford, Judge.**

# Case Summary

On April 1, 2016, members of the Indianapolis Metropolitan Police Department ("IMPD") executed a search warrant on a home located in Indianapolis. Upon doing so, the officers recovered large amounts of cocaine and marijuana. They also recovered multiple other items suggesting that the drugs were being distributed from the home. Kevin James Rent was arrested at the scene. He was subsequently charged with and found guilty of numerous drug-related charges. On appeal, Rent contends that the evidence is insufficient to sustain his convictions. Concluding otherwise, we affirm.

# Facts and Procedural History

On April 1, 2016, IMPD SWAT and narcotics officers executed a search warrant on a home located on Washington Boulevard in Indianapolis. As they approached the home, officers noticed the "overpowering odor of raw marijuana" emanating from inside. Tr. Vol. III, p. 40. Upon entering the home, Lieutenant Charles Deblaso observed Anthony Ector standing at the bottom of a stairwell holding an AK-style rifle. Instead of obeying Lieutenant Deblaso's instruction to drop the weapon, Ector threw it towards a nearby couch and attempted to run. He was almost immediately secured by the officers and taken into custody. Soon after Ector was secured, the officers came into contact with Rent and Charles Polk. Officers secured the home and took Rent and Polk into custody before conducting their search.

[3]    While searching the home, officers found (1) large quantities of both marijuana and cocaine; (2) items commonly used in the division and packaging of drugs for sale; (3) two firearms; and (4) numerous items containing Rent, Polk, and Ector's names and/or images. In the living room, the first room one enters through the front door, officers found a grocery bag containing 146.6 grams of cocaine sitting in plain view on the couch[1] and a Glock handgun with an extended magazine sticking up from between the couch cushions. In addition, officers found "marijuana roaches" and Rent's driver's license sitting on a coffee table that was placed "right in front of the couch." Tr. Vol. III, pp. 220, 221. Officers also recovered the rifle that Ector threw when Lieutenant Deblaso entered the home and found a television displaying the live feed of images from various surveillance cameras set up in and around the home.

[4]    In the kitchen, officers found a duffle bag containing several bags of marijuana on the counter and a trash bag containing a brick of marijuana in a cabinet. The total weight of the marijuana was 6794.83 grams.[2] Officers also found Dormin, an over-the-counter sleep aid commonly used to cut heroin, and baking soda.[3] In yet another cabinet, Officers found a box containing Polk's resume, pictures of Polk and Ector, and a credit card belonging to Rent. Officers also found two scales, one having cocaine residue on it and the other

---

[1] The cocaine was divided into smaller packages inside the grocery bag.

[2] 6794.83 grams equals approximately 14.98 pounds.

[3] Baking soda is commonly used to cut cocaine.

flakes of marijuana. Finally, the stove was pushed up against the back door, blocking access to the door.

[5] Officers found two more scales in the dining room. One of these scales had cocaine and heroin residue on it and the other marijuana. Officers also found a heat sealer and heat sealing bags. In addition, rather than being set up as a place where one might eat meals, the dining room was set up like "a weight room area" with a weight bench and a punching bag. Tr. Vol. III, p. 27.

[6] Officers found very few personal belongings in the rest of the home. Only one bedroom contained a bed. A laptop was found in a different bedroom. The closets had little to nothing in them and only a scarce amount of clothing was found in the home. The contents of the home matched those commonly found in a home being used as a "trap house."[4] Tr. Vol. IV, p. 87.

[7] Upon searching Rent's person, officers found $1120 in his pocket, including fifty-two $20 bills. They also found a key to the home. Officers recovered a small amount of cocaine from inside Rent's vehicle, which was parked close to the home and blocked in the driveway by Ector's vehicle.

---

[4] A trap house is not lived in but is commonly used to facilitate the manufacture, distribution, and use of illegal drugs. *See* Tr. Vol. III, p. 37; Tr. Vol. IV, pp. 87–88. Some indictors of a trap house are a lack of personal items, such as clothing and furniture; lack of food in the refrigerator; the presence of security cameras; and iron security or barricaded doors, leaving only one way in or out of the home. *See* Tr. Vol. III, p. 37; Tr. Vol. IV, pp. 87–89. It is common for multiple drug dealers to work out of a trap house and only those dealers typically have keys to the home. *See* Tr. Vol. IV, pp. 87–89.

[8] On April 5, 2016, the State charged Rent with Count I – Level 2 felony dealing in cocaine, Count II – Level 3 felony possession of cocaine, Count III – Level 4 felony unlawful possession of a firearm by a serious violent felon, Count IV – Level 5 felony dealing in marijuana, Count V – Level 6 felony possession of marijuana, and Count VI – Level 5 felony possession of a narcotic drug, *i.e.*, heroin. Following a jury trial, Rent was found guilty as charged. The trial court subsequently vacated Rent's convictions under Counts II and V and downgraded his conviction in Count VI to a Level 6 felony. The trial court imposed an aggregate twenty-year sentence with eighteen years executed and two years suspended to probation.

# Discussion and Decision

[9] In challenging his convictions, Rent contends that the evidence is insufficient to prove that he possessed the contraband at issue.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

[10]   The State prosecuted its case against Rent under the theory of constructive possession. "A defendant is in the constructive possession of [contraband] when the State shows that the defendant has both (i) the intent to maintain dominion and control over the [contraband] and (ii) the capability to maintain dominion and control over the [contraband]." *Gee v. State*, 810 N.E.2d 338, 340 (Ind. 2004) (citing *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997)). In this case, Rent concedes that he had the capability to maintain dominion and control over the contraband. He argues, however, that the State failed to prove the intent prong of constructive possession.

[11]   "When a defendant's possession of the premises on which drugs are found is not exclusive, then the inference of intent to maintain dominion and control over the drugs 'must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the controlled substances and their presence.'" *Id.* at 341 (quoting *Lampkins*, 682 N.E.2d at 1275). A non-exclusive list of these "additional circumstances" include: "(1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the

defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant." *Id.* at 341, 344 (citing *Henderson v. State*, 715 N.E.2d 833, 836 (Ind. 1999)).

[12] The evidence presented by the State supports the inference that Rent had knowledge of the nature and presence of the contraband. The home had the characteristics of a trap house, *i.e.*, a house that is used for the distribution of illegal drugs. Additionally, the vast majority of the contraband was in plain view and Rent's possessions were found in close proximity to the contraband. The smell of raw marijuana was also strong within the home and scales used to weigh the drugs for sale were found in numerous rooms. The evidence further revealed that Rent possessed a large amount of cash, much of which was $20 bills. The State presented evidence that it is common for drug dealers to have a large number of $20 bills because many drugs are commonly packaged for sale in $20 increments. In addition, when initially confronted by the officers, Rent indicated that "he was just stopping by." Tr. Vol. III, p. 44. The evidence, however, indicated otherwise as he had a key to the home and his vehicle was parked close to the home and was blocked by another vehicle. Rent's possession of a key suggests that he was dealing drugs from the home as only a dealer, and not an individual simply purchasing drugs, would typically have a key to the home.

[13] The State's evidence supports the inference that Rent had knowledge of the nature and presence of the weapon and the drugs found within the home. Rent's claim to the contrary effectively amounts to an invitation to reweigh the

evidence, which we will not do. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002) (providing that upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses).

[14] The judgment of the trial court is affirmed.

Bailey, J., and Mathias, J., concur.