## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 27 2020, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General

Anthony J. Smith
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Angel M. Tolentino, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | August 27, 2020 <br><br> Court of Appeals Case No. 20A-CR-731 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Gretchen S. Lund, Judge <br><br> The Honorable Eric S. Ditton, Magistrate <br><br> Trial Court Cause No. 20D04-1910-F6-1325 |

**Brown, Judge.**

[1] Angel M. Tolentino appeals his conviction for possession of methamphetamine as a level 6 felony. He claims the evidence is insufficient to sustain his conviction. We affirm.

## Facts and Procedural History

[2] At about 8:00 p.m. on September 26, 2019, Elkhart Police Corporal Justin Gage, a certified drug recognition expert, observed a Chevrolet Yukon make an improper right-hand turn and drift left of the centerline and initiated a traffic stop. Corporal Gage observed there were three occupants in the vehicle and did not see any of the occupants switch seats. He approached the vehicle, and the driver identified herself. Tolentino, who was seated in the front passenger seat, identified himself as "Diego Perez-Sosa" and stated his date of birth was May 16, 1997. Transcript Volume II at 19. Tolentino "was very fidgety with his hands and reaching around." *Id*. at 20. The person seated in the vehicle's rear passenger seat identified herself as Marani Guzman. Sergeant Jason Ray, a certified drug recognition expert and K-9 handler, arrived at the scene with a K-9. The driver was unable to provide proof of insurance. Corporal Gage asked Tolentino to exit the vehicle, and he initially did not do so and asked why he needed to exit. Corporal Gage again asked Tolentino to exit the vehicle, and he eventually complied. When Tolentino stepped out of the vehicle, Corporal Gage noticed little specks of a white substance on the front side of his shorts and the bottom of his shirt. Corporal Gage patted him down and Sergeant Ray observed what appeared to be synthetic marijuana on the back of Tolentino's shorts. According to Corporal Gage, he maintained a clear line of sight of the

two occupants who remained in the Yukon and the occupants did not make any movements towards the front passenger seat. Sergeant Ray did not see the occupants in the vehicle make any movements. The two remaining occupants exited the vehicle and stood near the police vehicles.

[3] Sergeant Ray's K-9 alerted following a free air sniff. Sergeant Ray observed crystals in plain view, which he believed to be methamphetamine and which "were loose just sitting on the seat." *Id*. at 62. Corporal Gage then returned to the front passenger seat and observed a small crystal-like white substance which he immediately recognized from his training and experience to be methamphetamine. Sergeant Ray performed a field test of the substance which indicated a positive result for methamphetamine. The substance found on the front passenger seat was later determined by a forensic scientist with Indiana State Police Lab to contain methamphetamine and had a net weight of .06 grams.

[4] The officers further discovered a glass pipe with burnt methamphetamine residue, a bag of methamphetamine, and a bag of a synthetic lookalike substance on Guzman. According to Sergeant Ray, there were clothes in the vehicle and the driver of the vehicle told him she had been sleeping in the vehicle. When booking him at police detention, law enforcement determined Tolentino's correct identity and that his birth date was March 8, 1996.

[5] The State charged Tolentino with possession of methamphetamine as a level 6 felony. The court held a bench trial at which it heard testimony from Corporal

Gage, Sergeant Ray, and the Indiana State Police Lab forensic scientist. The court admitted a recording taken from Corporal Gage's body camera showing the search of the vehicle. During Corporal Gage's testimony, the court referenced the white specks on Tolentino's shorts and asked,"[w]hether it's now or then or somewhere in between, did you ever have a thought of what you thought those white specks were," and Corporal Gage answered affirmatively. *Id*. at 54. When asked "[w]hat did you think they were, even if they weren't tested," he answered: "I would suspect them to be methamphetamine residue or trace amounts of methamphetamine crystals." *Id*.

[6] The court stated that it understood constructive possession was very fact specific and it is possible for a person to enter a vehicle and not have knowledge of something illegal in the vehicle, that here the methamphetamine was directly under Tolentino and touching his body, Tolentino gave a false name and date of birth to police, he was fidgeting, and he did not want to exit the vehicle. The court stated that, considering all of the evidence and the specific facts of this case, it found Tolentino guilty of possession of methamphetamine as a level 6 felony.

### *Discussion*

[7] When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.*

When confronted with conflicting evidence, we must consider it "most favorably to the trial court's ruling. *Id*. We will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[8]     Tolentino argues he was sitting on a miniscule amount of methamphetamine in a vehicle which belonged to someone else, he did not have exclusive control over the vehicle, it looked like the driver was living in the vehicle, and it is unreasonable under these circumstances to conclude that he had the requisite knowledge of the methamphetamine. He points out that another occupant of the vehicle was found with a glass pipe and a baggie of almost three grams of methamphetamine.

[9]     Ind. Code § 35-48-4-6.1 provides: "A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses methamphetamine (pure or adulterated) commits possession of methamphetamine, a Level 6 felony . . . ."

[10]    It is well-established that possession of an item may be either actual or constructive. *Canfield v. State*, 128 N.E.3d 563, 572 (Ind. Ct. App. 2019) (citing *Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g*, 685 N.E.2d 698 (Ind. 1997)), *trans. denied*. Actual possession occurs when a person has direct physical control over an item. *Grubbs v. State*, 132 N.E.3d 451, 453 (Ind. Ct. App. 2019) (citing *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011)),

*reh'g denied*. Constructive possession occurs when a person has the capability to maintain dominion and control over the item and the intent to maintain dominion and control over it. *Canfield*, 128 N.E.3d at 572 (citing *Lampkins*, 682 N.E.2d at 1275). The capability element of constructive possession is met when the State shows that the defendant is able to reduce the contraband to the defendant's personal possession. *Id.* (citing *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999)). The intent element of constructive possession is shown if the State demonstrates the defendant's knowledge of the presence of the contraband. *Id.* (citing *Goliday*, 708 N.E.2d at 6).

[11] A defendant's knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband, or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of contraband. *Id.* (citing *Goliday*, 708 N.E.2d at 6). These additional circumstances may include: "(1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns." *Id*. at 572-573 (citing *Gray*, 957 N.E.2d at 175). The State is not required to prove all additional circumstances when showing that a defendant had the intent to maintain dominion and control over contraband. *Id*. at 573 (citing *Gee v. State*, 810 N.E.2d 338, 344 (Ind. 2004)).

[12]    The evidence most favorable to Tolentino's conviction reveals that, when Corporal Gage approached the Chevrolet Yukon, Tolentino was seated in the front passenger seat and provided a false name and date of birth. Corporal Gage testified that Tolentino was "very fidgety with his hands and reaching around." Transcript Volume II at 20. When asked to exit the vehicle, Tolentino initially refused and asked why he needed to exit. When Tolentino eventually stepped out of the vehicle, Corporal Gage noticed a white substance on the front side of his shorts and the bottom of his shirt, and Sergeant Ray noticed there was a substance on the back of his shorts. When asked what he thought the white specks were on Tolentino's shorts, Corporal Gage, a certified drug recognition expert, testified: "I would suspect them to be methamphetamine residue or trace amounts of methamphetamine crystals." *Id*. at 54. Corporal Gage testified that he maintained a clear line of sight of the two occupants who remained in the Yukon after Tolentino exited the vehicle and that the occupants did not make any movements towards the front passenger seat, and Sergeant Ray similarly testified that he did not see the occupants of the vehicle make any kind of movements. After the K-9 alerted, Sergeant Ray observed the methamphetamine crystals in plain view "loose just sitting on the seat," and Corporal Gage returned to the front passenger seat and also observed the crystals which he immediately recognized to be methamphetamine. *Id*. at 62. The crystals found on the front passenger seat were determined to contain methamphetamine and had a net weight of .06 grams.

[13] Based upon the record and the facts of this case, we conclude that the State presented evidence of probative value from which a reasonable trier of fact could have found that Tolentino committed the offense of possession of methamphetamine as a level 6 felony and that his arguments amount to an invitation to reweigh the evidence.

[14] For the foregoing reasons, we affirm Tolentino's conviction.

[15] Affirmed.

Robb, J., and Crone, J., concur.